RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0489p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CERTIFIED RESTORATION DRY CLEANING NETWORK,
L.L.C.,

　　　　　　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

TENKE CORP. d/b/a RITE CLEANERS, and STEPHEN
DUBASIK,

　　　　　　　　　　　　　*Defendants-Appellees.*

No. 07-1562

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-10341—Sean F. Cox, District Judge.

Argued: November 29, 2007

Decided and Filed: December 17, 2007

Before: KENNEDY, MARTIN, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Gary W. Faria, UFER & SPANIOLA, Troy, Michigan, for Appellant. Michael D. Rossi, GUARNIERI & SECREST, Warren, Ohio, for Appellees. **ON BRIEF:** Gary W. Faria, UFER & SPANIOLA, Troy, Michigan, for Appellant. Michael D. Rossi, GUARNIERI & SECREST, Warren, Ohio, for Appellees.

---

## OPINION

---

　　CLAY, Circuit Judge. Plaintiff-Appellant Certified Restoration Dry Cleaning Network, L.L.C. ("Plaintiff") appeals the district court's denial of its motion for preliminary injunction. Plaintiff's underlying action seeks both monetary damages and injunctive relief for Defendant Tenke Corporation's and Defendant Stephen Dubasik's (collectively "Defendants") breach of a non-competition clause contained in the parties' franchise agreement. For the reasons that follow, we **REVERSE** the district court's order and **REMAND** the case to the district court with instructions to issue Plaintiff's requested preliminary injunction.

1

## I.  BACKGROUND

On June 6, 2002, Plaintiff, a citizen of Michigan, and Defendants, citizens of Ohio, entered into a written franchise agreement under which Plaintiff awarded Defendants a franchise to operate a "Restoration DC business utilizing the Restoration DC System and [Plaintiff's] Licensed Marks" within certain specified Ohio counties. J.A. at 31. This agreement offered Defendants the exclusive right to use Plaintiff's "business formats, methods, procedures, signs, standards, specifications," and customer lists within that geographic area. *Id.*

The franchise agreement states that the Restoration DC System is a restoration dry cleaning system "for cleaning smoke, water, and/or odor damaged clothing and other soft goods, from insured casualties, such as house fires." *Id.* The affidavit of Louis Bifano, Plaintiff's president, further explains that "[r]estoration dry cleaning differs from other dry cleaning principally with regard to the customer relationships involved and the sources of business." J.A. at 176. Restoration dry cleaning customers are typically, and in fact almost exclusively, "insurance companies and restoration contractors who by their nature have repeat business and are interested in ongoing established relationships with a proven capable restoration dry cleaner." *Id.* Plaintiff awards restoration dry cleaning franchises only to persons who already "own and operate quality dry cleaner establishments." J.A. at 31. As recognized by Plaintiff in its amended complaint, Defendants were such persons. *See* J.A. at 13. Prior to entering the franchise agreement, Defendants had operated not only a regular dry cleaning business, but also performed some restoration dry cleaning services. By entering the agreement, Defendants were seeking to use Plaintiff's proprietary system and customer lists as part of the restoration dry cleaning component of their business.

Section 13 of the franchise agreement provides for certain post-termination obligations of Defendants in the case of breach or cancellation of the contract. In particular, section 13.D contains a covenant not to compete which reads:

> For a period of 24 months from the time of expiration or termination of this Agreement, you promise not to engage as owner, shareholder, partner, director, officer, employee, consultant, salesperson, representative, or agent or in any other capacity in any restoration drycleaning business, within:
>
> 1.　　the Territory as defined in Exhibit A of this Agreement;
>
> 2.　　the geographic area encompassed by the Territories of any Restoration DC Franchisees as of the date of the termination or expiration of this Agreement;
>
> 3.　　a geographic area that is contained in a circle having a radius of 25 miles outward from the borders of the Territory as defined in Exhibit A of this Agreement.

J.A. at 52. Exhibit A of the franchise agreement defines the Territory encompassed by the agreement to include all of Portage, Mahoning, Trumbull, Geauga, and Ashtabula counties and parts of Cuyahoga county. J.A. at 59.

The franchise agreement contains a similar non-compete covenant, with slightly different language, in the provisions detailing Defendants' obligations while the contract is in effect. This covenant, found in section 6.A, reads:

> You promise during the term of this Agreement, to not [] engage as an owner, partner, shareholder, director, officer, employee, consultant, agent or in any other capacity in any other business offering restoration dry cleaning services the same or similar to the services sold by the Franchised Business (except for other Franchises under Franchise Agreements we enter into with you).

J.A. at 40. In section 17 of the franchise agreement, Defendants agreed that "[t]he covenants not to compete set forth in this Agreement are fair and reasonable, and will not impose any undue hardship on [them], since [they] have other considerable skills, experience, and education which will afford [them] the opportunity to derive income from other endeavors." J.A. at 57.

Section 15 of the agreement provides that the "Agreement, the Franchise and all claims arising from the relationship between [Defendants] and [Plaintiff], will be governed by the laws of the state of [Plaintiff's] principal business address," which is Michigan. J.A. at 55, 31.

On November 6, 2006, Plaintiff terminated the franchise agreement because of Defendant's failure to make required payments under the agreement. In the following months, Plaintiff and Defendants exchanged several letters regarding their respective termination obligations under the contract. During the course of this correspondence, Plaintiff realized that Defendants had not ceased all of their restoration dry cleaning activities, but rather believed that they should be able to continue such activities with respect to clients they had served before entering the franchise agreement. Plaintiff threatened to bring legal action if Defendants continued to not comply with the non-compete covenant.

In December 2006, Defendants responded to Plaintiff's threat by filing a declaratory judgment action against Plaintiff in the Court of Common Pleas in Trumbull County, Ohio in which they sought a declaration of their obligations under the franchise agreement. On January 19, 2007, Plaintiff removed the action to the United States District Court for the Northern District of Ohio (the "Ohio action").

Shortly thereafter, on January 22, 2007, Plaintiff commenced the instant action against Defendants in the United States District Court for the Eastern District of Michigan (the "Michigan action"). Plaintiff's complaint, as subsequently amended on January 29, 2007, alleged that Defendants had violated various provisions of the franchise agreement, including the non-compete clause, and requested temporary, preliminary, and permanent injunctive relief together with monetary damages.

After commencing the Michigan action, Plaintiff filed a motion to dismiss the Ohio action on Feburary 2, 2007. In support of this motion, Plaintiff argued that, because Defendants had improperly filed the Ohio declaratory judgment action in anticipation of Plaintiff's coercive action and because the franchise agreement's forum selection clause provided for the application of Michigan law and required that the action be brought in Michigan, the Ohio court was an improper forum and, accordingly, it would be more appropriate to resolve all issues relating to the agreement in the Michigan action. On February 6, 2007, Defendants filed a response to this motion to dismiss. On July 20, 2007, the Ohio district judge granted Plaintiff's motion and filed an order dismissing the action on the basis of the franchise agreement's forum selection clause. *See Tenke Corp. v. Certified Restoration Drycleaning  Network, L.L.C.*, No. 4:07-cv-170, 2007 WL 2114659, at *1 (N.D. Ohio July 20, 2007).

On February 13, 2007, following its motion to dismiss the Ohio action, Plaintiff filed a Motion For Temporary Restraining Order And For Preliminary Injunction in the Eastern District of Michigan. In support of this motion, Plaintiff submitted several exhibits and the affidavits of Robert

Ufer and Louis Bifano. Plaintiff argued that Defendants were in breach of the non-compete clause of the franchise agreement and that injunctive relief was appropriate. In particular, Plaintiff requested that the district court issue an injunction that would prohibit Defendants from: (1) operating any restoration dry cleaning business during the next two years in the geographic area specified in the non-compete clause; (2) engaging in any contacts with customers or former customers of the formerly franchised business; and (3) using the telephone number of the formerly franchised business. The district judge denied the request for a temporary restraining order on Feburary 14, 2007.

On February 26, 2007, in lieu of filing a response to Plaintiff's motion, Defendants filed an Answer and Counterclaim and a Motion for Partial Summary Judgment. In their answer, Defendants raised illegality of the contract as an affirmative defense. However, in their accompanying motion, Defendants essentially argued that they were not in violation of the terms of the non-compete clause. In particular, Defendants claimed that they were not and have never been a "restoration drycleaning business" and thus the non-compete covenant, by its own terms, did not apply to them.

On May 8, 2007, the district court issued an order denying Plaintiff's request for preliminary injunction and Defendants' motion for partial summary judgment. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, No. 07-10341, 2007 WL 1343682, at *1 (E.D. Mich. May 8, 2007). The district court found that Plaintiff had not demonstrated a substantial likelihood of success on the merits because: (1) the non-compete provision in the franchise agreement was ambiguous; (2) the record was not sufficiently developed to conclude that the non-compete provision was reasonable; and (3) comity considerations counseled against granting the injunction because of the pending Ohio action. *Id*. at *5.

Plaintiff filed this timely appeal on May 11, 2007.

## II. DISCUSSION

### A.     Standard of Review

We generally review a district court's denial of a request for a preliminary injunction for abuse of discretion. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d. 644, 649 (6th Cir. 2007); *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Under this standard, "we review the district court's legal conclusions *de novo* and its factual findings for clear error." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). The district court's determination of whether the movant is likely to succeed on the merits is a question of law and is accordingly reviewed *de novo*. *Tumblebus*, 399 F.3d at 760. However, the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed for abuse of discretion. *Id*. This standard of review is "highly deferential" to the district court's decision. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). "The district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Hamilton's Bogarts*, 501 F.3d at 649 (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000)). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake as been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

### B.     Applicable Law

While we apply our own procedural jurisprudence regarding the factors to consider in granting a preliminary injunction, we apply Michigan law to determine whether Plaintiff has met

the first of these factors by demonstrating a substantial likelihood of success on the merits of his underlying diversity action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Lantech.com v. Yarbrough*, No. 06-6488, 2007 WL 2669115, at *5 (6th Cir. Sept. 10, 2007) (unpublished) (applying state law to determine the meaning and validity of a non-compete agreement in a diversity case seeking a preliminary injunction to enforce the agreement). When interpreting contracts in a diversity action, we generally enforce the parties' contractual choice of forum and governing law. *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). In this case, the parties do not contest that the franchise agreement provides that Michigan law should govern their contractual dispute.[1]

In applying Michigan law, "we follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). If the issue has not been directly addressed, we must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.*

## C.     Analysis

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Given this limited purpose, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* Accordingly, a party "is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Id. But see Leary*, 228 F.3d at 739 (noting that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

When considering a motion for preliminary injunction, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the injunction;
> (3) whether issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by the issuance of the injunction.

*Tumblebus*, 399 F.3d at 760. These four considerations are "factors to be balanced, not prerequisites that must be met." *Jones*, 341 F.3d at 476 (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). The district judge "is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Id.* However, "it is generally useful for the district court to analyze all four of the preliminary injunction factors, especially since our analysis of one of the factors may differ somewhat from the district court's." *Leary*, 228 F.3d at 739 n.3.

---

[1] In its brief, Plaintiff does discuss whether the enforceability of section 13.D of the franchise agreement is governed by the federal Sherman Act or the Michigan Antitrust Reform Act. *See* Pl. Br. at 19-23. We find this discussion to be misguided because, as indicated above, we must apply state law to the substantive claim in a diversity action. Moreover, Plaintiff's distinction is unhelpful, because, as Plaintiff correctly argues, both federal and Michigan antitrust law apply the same reasonableness test to determine the validity of non-compete agreements.

In this case, the district court did not make findings regarding all of these factors, but simply concluded that a preliminary injunction was not warranted because Plaintiff had not established that it had a substantial likelihood of success on the merits. *Certified*, 2007 WL 1343692, at *5. The district court based this finding on its conclusions that:

> 1) [A]t this early juncture in the case, the [c]ourt cannot determine if the non-compete provisions at issue are reasonable under the specific factual circumstances presented here and are therefore enforceable; and 2) upon initial review, the challenged provisions appear capable of two conflicting interpretations and a ruling prior to discovery would be premature.

*Id*. The district court also stated that, in any event, "in order to promote comity and avoid inconsistent rulings, the [c]ourt does not believe that an injunction should be issued in this case before the Ohio Court rules on Plaintiff's pending Motion to Dismiss." *Id*.

Plaintiff argues that the district court abused its discretion in denying the request for a preliminary injunction because it misapplied Michigan law in finding that the non-compete clause was ambiguous and in concluding that Plaintiff had not adequately shown that the clause was reasonable. *See* Pl. Br. at 18-40. Plaintiff further contends that, to the extent that relevant facts were in dispute, the district court erred in not conducting an evidentiary hearing before ruling on the motion for preliminary injunction. *Id*. at 44-49. Finally, Plaintiff claims the district court erroneously concluded that comity counseled against granting the preliminary injunction because the court should not have afforded the Ohio action the "first-filed" deference that such actions are normally given. *Id*. at 50-51.

We agree with Plaintiff that the district court abused its discretion in denying Plaintiff's request for a preliminary injunction because it erroneously concluded that Plaintiff was not likely to succeed on the merits of its claim and because it gave undue weight to the comity concerns raised by the existence of the Ohio action. However, in order not to unduly prolong the resolution of the parties' underlying dispute by remanding the case for a second consideration of Plaintiff's motion for preliminary inunction, we have evaluated all the preliminary injunction factors and find that Plaintiff was entitled to the preliminary injunction requested.

### 1.      Strong Likelihood of Success on the Merits

The first factor to consider is whether the plaintiff has demonstrated "a strong likelihood of success on the merits." *Tumblebus*, 399 F.3d at 760. A party "is not required to prove his case in full at a preliminary injunction hearing." *Camenisch*, 451 U.S. at 395. However, "[i]n order to establish success on the merits of a claim, a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id*. (citing *In re DeLorean Motor Co.*, 755 F.2d at 1229).

The district court wrongly concluded that Plaintiff had not established a strong likelihood of success on the merits because it erred in applying Michigan law to find that the non-compete clause was ambiguous and that the established facts did not show that the clause was reasonable. Plaintiff offered sufficient proof to show that Defendants were in violation of the plain and unambiguous terms of the non-compete covenant contained in section 13.D of the franchise agreement, and, thus, properly established a strong likelihood that it would be successful on the merits of its claim.

### a.          Ambiguity of the Non-Compete Covenant

In denying Plaintiff's requested injunction, the district court concluded that Plaintiff "lack[ed] the requisite strong likelihood of success on the merits because the challenged provisions appear capable of two conflicting interpretations and a ruling prior to discovery would be premature." *Certified*, 2007 WL 1343682, at \*7. We find this conclusion to be erroneous under Michigan law.

In Michigan, "[t]he proper interpretation of a contract is a question of law." *Coates v. Bastian Bros., Inc.*, -- N.W.2d. --, 2007 WL 2452721, at \*2 (Mich. Ct. App. Aug. 30, 2007) (citing *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776 (Mich. 2003)). "That contracts are enforced according to their terms is a corollary of the parties' liberty to contract." *Id.* (citing *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005)). "The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *St. Clair Med., P.C. v. Borgiel*, 715 N.W. 2d 914, 918 (Mich. Ct. App. 2006). Michigan courts "examine[] contractual language and give[] the words their *plain and ordinary* meanings." *Coates*, 2007 WL 2452721, at \*2 (emphasis added). "If the language of the contract is unambiguous, [the court] construe[s] and enforce[s] the contract as written." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). If the contract language "is ambiguous, testimony may be taken to explain the ambiguity." *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005). "Only when contract language is ambiguous does its meaning become a question of fact." *Coates*, 2007 WL 2452721, at \*2 (citing *Port Huron Ed. Ass'n v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996)); *accord Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453-54 (Mich. 2003).

"A contract is ambiguous if 'its words may *reasonably* be understood in different ways.'" *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W. 2d 411, 414 (Mich. Ct. App. 1998) (emphasis added) (quoting *Raska v. Farm Bureau Ins. Co.*, 314 N.W.2d 440, 440 (Mich. 1982)). In other words, a "contract is ambiguous when its provisions are capable of conflicting interpretations." *Klapp*, 663 N.W.2d at 453 (Mich. 2003). Courts "cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare ambiguity." *Id.* "Instead, contracts must be 'construed so as to give effect to every word or phrase as far as practicable.'" *Id.* (quoting *Hunter v. Pearl Assurance Co., Ltd.*, 291 N.W. 58, 58 (Mich. 1940)). However, "[c]ourts may not impose an ambiguity on clear contract language." *Coates*, 2007 WL 2452721, at \*2 (citing *City of Grosse Pointe Park*, 702 N.W.2d at 113).

In the instant case, the meaning of the non-compete clause in section 13.D of the franchise agreement is not ambiguous. The non-compete clause prevents Defendants from "engag[ing] as owner, shareholder, partner, director, officer, employee, consultant, salesperson, representative, or agent or in any other capacity in any resoration drycleaning business" within a specified geographic area for a two-year period. J.A. at 52. Nothing about the ordinary meaning of these terms suggests that they are reasonably capable of two conflicting interpretations. The plain import of this contract language is to prohibit Defendants from performing any restoration dry cleaning services within the specified geographic area for the two years following the contract's termination.

However, the district court concluded that another plausible interpretation of this language exists. *See Certified*, 2007 WL 1343682, at \*7. In this regard, the district court appears to have accepted the validity of Defendants' argument, which they repeat on appeal, that they are not operating a "restoration drycleaning business," which, according to Defendants, is a dry cleaning business that specializes in restoration dry cleaning, but rather an ordinary dry cleaning business that offers restoration dry cleaning services as part of its many services. *See id.* at \*5; Def. Br. at 6-7. Defendants support this reading of their post-termination obligations by contrasting the language

of the non-compete clause in section 6.A, which prohibits engaging "in any other business offering restoration dry cleaning services," J.A. at 40, with the language of section 13.D, which forbids engaging "in any restoration drycleaning business," J.A. at 52. They argue that "the former activity contemplates *any* business, e.g., an insurance business, of which restoration drycleaning is but a component, while the latter activity describes a stand-alone, one dimensional restoration drycleaning business." Def. Br. at 7.

We find this linguistic argument to be wholly unpersuasive. The difference in language between the two non-compete provisions arises from the difference in the timing of their application rather than from any factual distinction between a "restoration drycleaning business" and a dry cleaning business that offers restoration dry cleaning services. The purpose of the non-compete provision in section 6.A is to prevent the franchisee, while under contract, from utilizing the franchisor's proprietary Restoration DC System to perform restoration dry cleaning services in other business ventures which have not paid the franchise fees and which are not covered by the contract. As the franchisee is under contract, and thus providing restoration dry cleaning services as part (or even all) of its franchised business, when this non-compete clause applies, it would be nonsensical if the contract prohibited the franchisee from engaging "in any restoration drycleaning business." Accordingly, the language of this section 6.A non-compete clause only prohibits performing restoration dry cleaning services "in any other business" than the franchised one. J.A. at 40.

Section 13.D, in contrast, is designed to protect the franchisor, after the termination of the agreement, from unfair competition by the former franchisee who has knowledge of the franchisor's proprietary Restoration DC System and customer lists. At this stage of the parties' relationship, the franchisor does not want the former franchisee to provide customers with any restoration dry cleaning services because the former franchisee's knowledge of the franchisor's business methods and system might give it a competitive advantage. Accordingly, the language of section 13.D prohibits engaging in "*any* restoration drycleaning business," which, in this context, most naturally means any business providing restoration dry cleaning services, regardless of whether those services form a major or minor part of the business. J.A. at 52 (emphasis added). To read this post-termination non-compete clause as prohibiting the former franchisee's provision of restoration dry cleaning services only when it engages in a business which specializes in providing such services would allow the former franchisee to unfairly compete with the franchisor as long as he ensures that his business provides at least some other services besides just restoration dry cleaning services. Such a reading would undermine the purpose of the non-compete clause – which is probably why Defendants have proposed it – and would lead to absurd results.

We do not consider Defendants' proposed interpretation of the phrase "any restoration drycleaning business" in section 13.D to be a plausible reading of that language. Because "contracts must be construed consistent with common sense and in a manner that avoids absurd results," *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 636 (6th Cir. 2006) (citing *Parrish v. Paul Revere Life Ins. Co.*, 302 N.W.2d 332, 333 (Mich. Ct. App. 1981)), we find that the language of the non-compete clause in the parties' franchise agreement is not susceptible to conflicting interpretations, and is, thus, not ambiguous.

### b.     Reasonableness of the Non-Compete Covenant

In addition to erroneously finding the non-compete clause ambiguous, the district court improperly concluded that there was insufficient evidence to determine whether Plaintiff would

likely succeed in convincing the court that the non-compete clause was reasonable and therefore enforceable.[2]

The Michigan Antitrust Reform Act generally prohibits any "contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce." Mich. Comp. Laws § 445.772 (2002). However, the statute explicitly authorizes agreements not to compete as long as they are reasonable. *Coates*, 2007 WL 2452721, at \*4; *Bristol Window & Door, Inc. v. Hoogenstyn*, 650 N.W.2d 670, 678 (Mich. Ct. App. 2002). Section 4(a)(1) of the Act provides:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of the employment *if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business*. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

Mich. Comp. Laws § 445.774a(1) (emphasis added). The Michigan courts have clarified that "§4(a)(1) represents a codification of the common-law rule that 'the enforceability of noncompetition agreements depends on their reasonableness.'" *St. Clair Med.*, 715 N.W.2d at 918 (quoting *Bristol Window & Door,* 650 N.W.2d at 679). Although §4(a)(1) only refers to non-competition agreements between employers and employees, Michigan courts have "reject[ed] the suggestion that with its enactment of [§4(a)(1)] the Legislature intended by implication to prohibit all noncompetition agreements entered into outside the employer-employee context." *Bristol Window & Door*, 650 N.W.2d at 680. Rather, they have concluded that "[a]greements not to compete are permissible under Michigan law as long as they are reasonable." *Coates*, 2007 WL 2452721, at \*4.

In evaluating a non-competition clause for reasonableness, Michigan courts generally examine the clause's duration, geographic scope, and the type of employment prohibited. *See* Mich. Comp. Laws § 445.774a(1). They also consider the reasonableness of the competitive business interests justifying the clause. *See, e.g.*, *St. Clair Med.*, 715 N.W.2d at 919; *Whirlpool Corp. v. Burns*, 457 F. Supp.2d 806, 812 (W.D. Mich. 2006) ("The reasonableness of a covenant not to compete is not analyzed in the abstract, but in the context of the employer's particular business interest and the function and knowledge of the particular employee."). This reasonableness inquiry is "inherently fact specific." *Capaldi v. Liftaid Transport, L.L.C.*, No. 267981, 2006 WL 3019799, at \*5 (Mich. Ct. App. Oct. 24, 2006) (unpublished); *Northern Mich. Title Co. v. Bartlett*, No.

---

[2]Plaintiff spends a significant portion of its brief arguing that it did not have the burden to demonstrate that the non-compete clause was reasonable, but rather that Defendants bore the burden of showing the clause's unreasonableness. *See* Pl. Br. at 19-23. Plaintiff then contends that, by not countering Plaintiff's claim that the covenant was reasonable in the district court, Defendants have failed to preserve for appeal any objection to the reasonableness of the covenant not to compete. *See id*. at 25-26.

We find this argument to be without merit. Michigan law is clear that "[t]he burden of demonstrating the validity of the agreement is on the party seeking enforcement." *Coates*, 2007 WL 2452721, at \*4. Moreover, in seeking a preliminary injunction, a federal plaintiff has the burden of establishing the likelihood of success on the merits. *See Tumblebus*, 399 F.3d at 760. Accordingly, Plaintiff, not Defendants, had the burden of demonstrating the reasonableness of the non-compete clause.

248751, 2005 WL 599867, at *3 (Mich. Ct. App. Mar. 15, 2005) (unpublished).[3]  However, "[t]he reasonableness of a noncompete provision is a question of law where relevant facts are undisputed." *Coates*, 2007 WL 2452721, at *4.

With respect to duration, Michigan courts have not provided any bright line rules.  Rather, they "have upheld non-compete agreements covering time periods of six months to three years." *Whirlpool*, 457 F. Supp.2d at 813.  *See Coates*, 2007 WL 2452721, at *4 (one year);  *Rooyakker & Sitz PLLC v. Plante & Moran PLLC*, -- N.W.2d --, 2007 WL 1429691, at *6 (Mich. Ct. App. May 15, 2007) (two years); *St. Clair Med.*, 715 N.W.2d at 917 (one year); *In re Spradlin*, 284 B.R. 830 (E.D. Mich. 2002) (five years).

Michigan courts have similarly not imposed any strict limitation on the permissible geographic scope of non-compete agreements. Instead, they have indicated that a "restriction that is not limited in its geographic scope is not necessarily unreasonable." *Capaldi*, 2006 WL 3019799, at *4 (finding that a geographically unlimited six month restriction on employment with any healthcare information systems consulting business was reasonable when the employer operated in forty-three states and several foreign countries).  The guiding principle is that such geographic limitations "must be tailored so that the scope of the agreement is no greater than reasonably necessary to protect the employer's legitimate business interests." *Id*. (quoting *Superior Consulting Co., Inc. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994)).

The consideration of whether the type of business prohibited is reasonable is also generally determined by the competitive business interests that the non-compete covenant is designed to protect.  With respect to these interests, the Michigan Court of Appeals has provided some guidance:

> Because a prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition.  To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill.

*St. Clair Med.*, 715 N.W.2d at 919 (internal citations omitted).  "Reasonable covenants may protect such legitimate interests as trade secrets, confidential information, close contact with the employer's customers or customer lists, or cost factors and pricing." *Kelsey-Hayes Co. v. Maleki*, 765 F. Supp. 402, 407 (E.D. Mich. 1991).  However, "[a]n employer may *not* reasonably prohibit future use of general knowledge or skill." *Id*.

"[U]nder Michigan law, preventing the anticompetitive use of confidential information is a legitimate business interest.'" *Rooyakker*,  2007 WL 1429691, at *6 (quoting *Whirlpool*, 457 F. Supp.2d at 812).  *See also Follmer, Rudzewicz & Co., P.C. v. Kosco*, 362 N.W.2d 676, 680-81 (Mich. 1984) ("While an employee is entitled to unrestricted use of general information acquired during the course of his employment or information generally known in the trade or readily ascertainable, confidential information, including information regarding customers, constitutes property of the employer and may be protected by contract.").  Likewise, "[a]n employer has a reasonable business interest in protecting its good will and, specifically, in 'restricting its former employees from enticing away the employer's old customers.'" *Frontier Corp. v. Telco Commc'ns Group, Inc.*, 965 F. Supp. 1200, 1208 (S.D. Indiana 1997) (applying Michigan law) (citation

---

[3]Under Michigan court rules, "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." Mich. App. R. 7.215 (1985).  Nevertheless, these opinions are useful for our purpose of predicting how a Michigan court would resolve a similar issue.

omitted).  Indeed, an employee "who establishes [client] contacts and relationships as the result of the goodwill of his employer's [business] is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure." *St. Clair Med.*, 715 N.W.2d at 920.

Accordingly, limited duration agreements that prohibit competition by persons with access to confidential information have been upheld.  *See Coates*, 2007 WL 2452721, at *4-5 (upholding a non-compete provision prohibiting former general manager's employment with any of employer's competitors located within one hundred miles of any of employer's locations for a period of one year); *Rooyakker*, 2007 WL 1429691, at *6 (upholding a non-compete provision prohibiting accountant from rendering any of the services provided by his former firm to any of that firm's clients for a period of two years); *St. Clair Med.*, 715 N.W.2d at 919-20 (upholding a non-compete clause prohibiting a physician from practicing medicine within seven miles of his former medical office for a period of one year); *In re Spradlin*, 284 B.R. at 836 (upholding a non-compete  clause prohibiting seller of furniture business from engaging in any office furniture business within a two-state area for a period of five years); *Lowry Computer Prods., Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) (upholding non-compete clause prohibiting sales agent of a computer hardware and software firm from working for any of firm's competitors for a period of one year); *Superior Consulting*, 851 F. Supp. at 847 (upholding non-compete clause prohibiting a former employee of a healthcare management consulting business from engaging in any healthcare information consulting business for a period of six months).

However, courts have not enforced covenants that have prevented the former employee from engaging in competition with the employer when the employee had no confidential information that would have given him an unfair competitive advantage.  *See Northern Mich. Title Co.*, 2005 WL 599867, at *5 (finding unreasonable a non-compete clause which completely prohibited former employees of title insurance company from engaging in the title insurance business for five years based on conclusion that nothing about employees' former employment would give them unfair advantage in competing for clients who had never given business to the employer in the first place); *A Complete  Home Care Agency, Inc. v. Gutierrez*, No. 246280, 2004 WL 1459450, at *2 (Mich. Ct. App. June 29, 2004) (unpublished) (upholding a lower court's determination that a covenant prohibiting a former nursing services employee from performing any kind of services, including non-nursing services, for clients of former employer was unreasonably broad); *Whirlpool*, 457 F. Supp.2d at 813 (finding that employer had not demonstrated a likelihood of success in enforcing a non-compete clause prohibiting employment with firm's competitors when employer had not demonstrated that employee was likely to disclose or use to his advantage confidential information acquired while working for employer); *Frontier Corp.*, 965 F. Supp. at 1209 (finding unreasonable a non-compete clause prohibiting the solicitation of any of former employer's customers because it would prohibit solicitation of customers with whom employee had no contact, and therefore no competitive advantage); *Robert Half Int'l v. Van Steenis*, 784 F. Supp. 1263, 1273-74 (E.D. Mich. 1991) (finding unreasonable the portion of a non-compete clause prohibiting former employee from competing within fifty miles of employer's Ann Arbor office because employee was never involved in the line of business engaged in by that office and thus did not gain any information from his employment that would facilitate his competing with employer in that line of business).

In the instant case, Plaintiff has presented sufficient evidence to demonstrate a strong likelihood that the franchise agreement's non-competition clause is enforceable.  Under Michigan law, Plaintiff has a reasonable competitive interest in preventing Defendants from using the confidential information they learned as Plaintiff's franchisee to gain a competitive advantage in the provision of restoration dry cleaning services.  *See Rooyakker*, 2007 WL 1429691, at *6.  Plaintiff produced evidence to show that the non-competition clause is designed to prevent Defendants from having such an unfair competitive advantage over Plaintiff's future franchisee.  As Plaintiff's president explained in his supporting affidavit:

> If a former franchisee breaches [the promise not to compete] following franchise termination, that former franchisee has an unfair competitive advantage with CRDN's new franchisee (and accordingly with CRDN) by virtue of its existing relationships with numerous institutional customers which it either established or maintained (or both) using its association with CRDN and its marks, reputation, pricing, relationships, and business system, and by virtue of its ability to attract new customers as a result.

J.A. at 176. In short, by prohibiting Defendants from providing any restoration dry cleaning services for two years following the termination of the franchise, the non-compete clause prevents Defendants from using their knowledge of Plaintiff's Restoration DC System and the relationships they established as Plaintiff's franchisee to steal customers from Plaintiff's new franchisee. Since the confidential information gained by Defendants under the franchise agreement only relates to the provision of restoration dry cleaning services, the non-compete clause does not prohibit all dry cleaning competition, but only competition for restoration dry cleaning business. Accordingly, the clause appears to reasonably serve Plaintiff's legitimate competitive interests and seems appropriately limited to the type of business for which Defendants would have an unfair competitive advantage.

The non-compete provision also seems to be reasonable in its duration and geographic scope. The duration is limited to two years, a period which Michigan courts have consistently upheld as reasonable, *see, e.g., Rooyakker*, 2007 WL 1429691, at *6, and which this Court does not consider unreasonable in light of Plaintiff's goal of preventing unfair competition for customers.

The geographic limitation is likewise tailored to serve the legitimate goal of preventing unfair competition with Plaintiff's future franchisee. While the district court found that the geographic limitations of the non-compete clause "would not only prohibit Defendants from operating a 'restoration dry cleaning business' in virtually all of Ohio and parts of Pennsylvania, they would also prohibit Defendants from operating a 'restoration drycleaning business' during the next two years in a territory that comprises an unspecified 'geographic area encompassed by the Territories of any CRDN franchisees' that existed as of the date the Franchise Agreement was terminated," *Certified*, 2007 WL 1343682, at *7, we find this factual description of section 13.D's non-compete clause to be clearly erroneous. The clause does not prohibit competition in "virtually all of Ohio" because it only extends to a twenty-five mile radius of six of Ohio's eighty-eight counties. *See* J.A. at 52. Likewise, the geographic area described in subparagraph two of the non-compete clause is not "unspecified," but rather includes a defined area which Defendants could reasonably calculate simply by requesting a list of all the territories of Plaintiff's franchisees as of the date of the termination of the franchise agreement. This narrowly defined geographic scope does not seem patently unreasonable.

Accordingly, we find that, contrary to the district court's conclusion, Plaintiff did produce evidence to show a strong likelihood of the non-compete clause's enforceability. Plaintiff demonstrated that the clause was needed to protect Plaintiff's legitimate competitive interests and that it was tailored in both duration and geographic scope to serve these interests. In contrast, Defendants did not offer any evidence of the clause's unreasonableness. The district court committed an error of law in concluding that Plaintiff had not demonstrated a strong likelihood of success on the merits.

### 2.      Irreparable Injury to Plaintiff Absent the Injunction

After determining that a plaintiff has demonstrated a substantial likelihood of success on the merits of his underlying claim, the second factor that a court must consider when deciding whether

to issue a preliminary injunction is whether the plaintiff will suffer irreparable injury without the injunction. *Tumblebus*, 399 F.3d at 760. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). "However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)).

The likely interference with customer relationships resulting from the breach of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Id*. at 512 (internal citations omitted). Such injuries are precisely what Plaintiff will suffer if Defendants are allowed to continue to breach the franchise agreement's non-compete clause. Accordingly, we find that Plaintiff would likely suffer an irreparable injury without the issuance of the preliminary injunction.

### 3.      Substantial Harm to Others

The third factor for a court to consider is "whether the issuance of the injunction would cause substantial harm to others." *Tumblebus*, 399 F.3d at 760. In the instant case, there is no indication that a preliminary injunction enforcing the terms of the parties' franchise agreement would cause any harm to third parties. The only third parties that might be affected by the injunction are Defendants' current restoration dry cleaning customers. However, they would still be able to obtain restoration dry cleaning services from Plaintiff's new restoration dry cleaning franchisee. Thus, we do not find that this factor counsels against issuing the preliminary injunction.

### 4.      Public Interest Served by the Injunction

The final factor to evaluate in deciding upon a motion for preliminary injunction is "whether the public interest would be served by the issuance of the injunction." *Tumblebus*, 399 F.3d at 760. No important public policies readily appear to be implicated by the issuance of the preliminary injunction in this case other than the general public interest in the enforcement of voluntarily assumed contract obligations. As previously indicated, enforcement of this non-compete clause would not run afoul of either federal or Michigan antitrust policy because the injunction appears to be reasonable in purpose, scope, and duration. *See supra* section II.C.1.b. On the contrary, issuing the preliminary injunction would hold Defendants to the terms of the bargain they entered into through the franchise agreement. Enforcement of contractual duties is in the public interest. Accordingly, we find that this final factor also points toward the issuance of the preliminary injunction.

### 5.      Comity Considerations

Although we have found that the four preliminary injunction factors favor issuing Plaintiff's requested injunction in this case, the district court relied upon the discretionary first-to-file doctrine, *see Certified*, 2007 WL 1343682, at \*4 n.2, to conclude that "comity considerations weigh in favor of not granting the preliminary injunction while [Plainiff's] Motion to Dismiss in the Ohio Action is still pending." *Id*. at \*8. We find this reliance on the first-to-file doctrine to be misplaced and agree with Plaintiff that the district court's consideration of the Ohio action was an abuse of discretion.

The first-to-file rule, while not frequently discussed by this Court, is a "well-established doctrine that encourages comity among federal courts of equal rank." *Amsouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004) (quoting *Zide Sport Shop of Ohio v. Ed. Tobergate Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (unpublished)) (emphasis altered). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'" *Zide Sport Shop*, 16 F. App'x at 437 (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)) (emphasis added). However, "the first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment." *Amsouth Bank*, 386 F.3d at 791 n.8. As we have previously explained:

> District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does *not* have a right to bring a declaratory judgment action in the forum of his choosing. Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, *anticipatory suits, and forum shopping*.

*Zide Sport Shop*, 16 F. App'x at 437 (internal citations omitted) (emphasis added). "Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *Amsouth Bank*, 386 F.3d at 791 n.8 (quoting *UAW v. Dana Corp.*, No. 3:99CV7603, 1999 WL 33237054, at *6 (N.D Ohio Dec. 6, 1999)).

In this case, a proper application of the first-to-file rule would have led the district court to the conclusion that comity did not counsel against issuing a preliminary injunction. The Ohio action filed by Defendants was the very kind of anticipatory suit which should not have been given deference under the first-to-file rule. As the Ohio district judge recognized when it dismissed the action, the forum selection clause in the franchise agreement clearly mandated that the parties' dispute be resolved in a Michigan, rather than an Ohio, forum. *See Tenke Corp.*, 2007 WL 2114659, at *1-2. By filing in Ohio courts, Defendants were attempting to forum shop as well as preempt resolution of the parties' dispute by the proper forum. Thus, the Ohio action was not entitled to any deference under the first-to-file rule. Because the Ohio declaratory judgment action was not entitled to deference under the first-to-file rule, comity did not require that any injunctive relief sought by Plaintiff in its properly-filed coercive action be denied. The district court committed a clear error of judgment in denying Plaintiff's request for preliminary injunction on such a basis.

### 6.      Lack of Evidentiary Hearing

While the district court erred in its application of the preliminary injunction factors and consideration of the Ohio action, it did not err by failing to conduct an evidentiary hearing. Plaintiff appears to concede this point, but argues, in the alternative, that to the extent that the district court's holding can be read to suggest that more factual findings were required, the district court erred by failing to conduct an evidentiary hearing. *See* Pl. Br. at 44-49. We find that Plaintiff's description of the law on this point is correct.

Federal Rule of Civil Procedure 65, which governs the issuance of preliminary injunctions, does not explicitly require the court to conduct an evidentiary hearing before issuing an injunction, but it does direct that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 56(a)(1). We have interpreted this requirement to "impl[y] a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 484 (6th Cir. 2002)

(quoting *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991)). *See also Carpenter's Dist. Council v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958) (Rule 65 "contemplates that the issuance of a preliminary injunction shall be upon notice to the adverse party *and after a hearing*." (emphasis added)). However, our Rule 65 jurisprudence indicates that a hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law. *See Lexington-Fayette Urban County Gov't v. Bellsouth Telecomm., Inc.*, 14 F. App'x 636, 639 (6th Cir. 2001) (unpublished) (Rule 65 "does not require the presentation of oral testimony . . . particularly . . . when the issues litigated are primarily questions of law."); *Sentinel Trust Co. v. Namer*, 172 F.3d 873 (6th Cir. 1988) (unpublished table opinion) (interpreting prior precedent to require an evidentiary hearing "when there is a disputed issue of fact and the documentary record is insufficient to resolve it"); *Detroit & Toledo Shore Line R.R. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 357 F.2d 152, 153-54 (6th Cir. 1966) (finding that, because there was a controversy over the facts, a hearing should have been held before issuing a preliminary injunction); *Cicci*, 261 F.2d at 8 (finding no hearing to be required "if there is no dispute between the parties about the facts," but requiring a hearing "if the allegations of a complaint are denied by a defendant"). *But see County Sec. Agency*, 296 F.3d at 484 (finding a hearing to be required even though defendant "did not contest the factual basis underlying the stipulated preliminary injunction" but only "challeng[ed] the legal basis for the issuance of any future injunction against him").

This approach for determining when an evidentiary hearing is required finds its best support in our leading case on the subject, *S.E.C. v. G. Weeks Sec., Inc.*, 678 F.2d 649, 651 (6th Cir.1982). In *Weeks*, the district court issued two preliminary injunctions, one prohibiting the defendant from further violating anti-fraud provisions of the securities laws, and one prohibiting further violations of the registration provisions of the securities laws. On appeal, we found that the district court had abused its discretion in issuing the anti-fraud injunction without first conducting an evidentiary hearing because that injunction "turned on disputed factual questions." *Id.* at 651. However, we upheld the issuance of the registration injunction without a hearing because the district court "had before it adequate documentary evidence upon which to base an informed, albeit preliminary, conclusion" that the plaintiff would prevail on the merits. *Id.* We concluded that "[w]here the resolution of the questions to be considered in issuing a preliminary injunction turns on legal rather than factual conclusions, the taking or oral testimony by both sides is not a prerequisite to a fair hearing." *Id.* Our rationale in *Weeks* is best summarized in the rule, initially announced by the Eleventh Circuit in *McDonald's Corp. v. Robertson*, and which we now adopt as our own:

> [W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.

147 F.3d 1301, 1312-13 (11th Cir. 1998).

In the instant case, the district court properly found that no material facts were in dispute. *See Certified*, 2007 WL 1343682, at *1. Under these circumstances, the district court was not required to conduct an evidentiary hearing prior to ruling on Plaintiff's motion for preliminary injunction. However, if questions of fact had been in dispute, an evidentiary hearing would have been required.

### III. CONCLUSION

We hold that the district court abused its discretion when it denied Plaintiff's request for a preliminary injunction. The district court erred in applying Michigan law by concluding that the

non-compete clause was ambiguous and not demonstrably reasonable.  The district court further abused its discretion by giving undue comity consideration to the existence of the Ohio action. However, the district court did not err in failing to conduct an evidentiary hearing because no material facts necessary to ruling upon Plaintiff's motion were in dispute.

Having reviewed all of the preliminary injunction factors, we find that Plaintiff was entitled to its requested preliminary injunction.  Accordingly, we **REVERSE** the district court's decision and  and **REMAND** the case with instructions to issue Plaintiff's requested preliminary injunction and to proceed with a consideration of the merits of Plaintiff's claims.