**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0473n.06
Filed: August 6, 2008

**No. 07-5625**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **THIRD PARTY SOLUTIONS, INC.,** a Delaware Corporation and a wholly owned subsidiary of Fiserv health, Inc., | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| *Plaintiff-Appellant,* | ) ) | |
| v. | ) ) | **O P I N I O N** |
| **EXPRESS SCRIPTS, INC.,** | ) ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:     COLE and GRIFFIN, Circuit Judges; and SARGUS, District Judge.[*]

**COLE, Circuit Judge.**   Plaintiff-Appellant Third Party Solutions, Inc. ("TPS") and

Defendant-Appellee Express Scripts, Inc. ("ESI") both contract with retail pharmacies to provide

payment for workers' compensation prescription claims, which they then recoup from the entities

responsible for providing prescription coverage. TPS provides pharmacies with "default" third-party

billing and support services when an individual seeks to fill a prescription as a result of a workers'

compensation injury but does not know who is legally responsible for payment of his or her claim.

ESI, on the other hand, provides prescription coverage to specific individuals who are members of

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

its ExpressComp program. Thus, ESI provides pharmacies with billing and support services when an ExpressComp-covered worker seeks to fill a prescription as a result of a workers' compensation injury.

Many pharmacies that contract with ESI also contract with TPS so that TPS can take assignment of claims by ExpressComp-covered workers who fail to identify themselves to the pharmacies as ExpressComp members by presenting an ExpressComp identification card. Because ESI lost its benefit from these claims, it began increasing its efforts to ensure that prescriptions submitted by injured workers covered by an ExpressComp program are processed through ESI and not through third-party billers like TPS. These efforts include notifying pharmacies that particular injured workers, for whom the pharmacies previously submitted claims to TPS, are actually covered by ExpressComp and that future prescriptions for the workers should be processed directly though ESI. ESI also began sending letters to individual injured workers requesting that they present that letter or their ExpressComp card to pharmacists when they seek to fill prescriptions in the future.

TPS argues that ESI's practice of redirecting to ESI prescription claims that have previously been submitted to TPS interferes with TPS's contractual and business relationships with the pharmacies and violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(iii) ("CFAA"). TPS, therefore, sought a preliminary injunction to enjoin ESI "from contacting . . . Pharmacies by telephone, mail, or any other means with the purpose of interfering with the rights to assignment held by [TPS] or in any way causing any claim that any . . . Pharmacy has assigned to [TPS] or had the obligation to assign to [TPS] to be directed to [ESI] for payment or otherwise representing to any . . . Pharmacy that assignment of any claim to [TPS] would interfere with the

ability of the pharmacy or any other person to receive reimbursement under the workers' compensation system." The district court denied TPS's motion.

When considering a motion for preliminary injunction, a district court must consider whether (1) the movant has a strong likelihood of success on the merits; (2) the movant would suffer irreparable injury without the injunction; (3) issuance of the injunction would cause substantial harm to others; and (4) the public interest would be served by the issuance of the injunction. *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Tumblebus v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005)). Here, the district court found that TPS failed to establish a strong likelihood of success on the merits of its tortious interference claims because: (a) TPS's contracts with pharmacies state that TPS is assigned claims only if the assignment does not contravene the pharmacies' contracts with other parties and, therefore, (b) TPS's contracts are not breached if ESI's contracts obligate pharmacies to submit prescription claims to ESI after ESI's letters or calls confirm a worker's ExpressComp coverage. In other words, the court found that even if ESI is seeking to promote an interpretation of its contracts with pharmacies that assigns claims to ESI on the basis of redirecting letters or phone calls, it did so without malice, and that action would not breach TPS's contracts.

Further, the court found that ESI did not intend to cause or induce a breach of any business relationship between TPS and the pharmacies, because ESI's contact with the pharmacies and the injured workers was not without legal justification nor did it constitute improper means. The court also found that TPS did not establish a strong likelihood of success on its CFAA claims because "[w]hether or not the pharmacist and technicians are authorized to alter patient profiles at ESI's request appears to be a matter of interpretation of the contracts between ESI and [the pharmacies]."

3

Next, the district court found that TPS is unlikely to suffer irreparable harm absent a preliminary injunction because TPS has the ability to calculate the amount of money damages caused by ESI's allegedly improper redirecting efforts. The court went on to conclude that ESI would not suffer substantial harm from a preliminary injunction, and that the public interest would not be served by enjoining ESI's activities.

A "district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed for abuse of discretion." *Tenke Corp.*, 511 F.3d at 541. This standard of review is "highly deferential" to the district court's judgment. *Id.* (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). "The district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (internal quotations omitted).

After carefully reviewing the record, the applicable law, the parties' briefs, and counsels' arguments, we conclude that the district court did not abuse its discretion in balancing the four factors and determining that a preliminary injunction is not warranted. Further, because the district court's opinion correctly states the law and clearly articulates the well-reasoned analysis supporting the denial of a preliminary injunction, the issuance of a detailed written opinion from this Court is unnecessary. Accordingly, the judgment rendered by the Honorable Samuel H. Mays, Jr. is affirmed on the basis of the reasoning set forth in the district court's April 12, 2007 sealed opinion and order.