**CAPITOL INDEMNITY CORPORATION, Plaintiff–Appellee,**

v.

**Richard JELLINICK, Defendant–Appellant.**

**No. 02–5153.**

United States Court of Appeals, Sixth Circuit.

Sept. 29, 2003.

Parks T. Chastain, Brewer, Krause & Brooks, Nashville, TN, for Plaintiff–Appellee.

Arthur G. Muegler, Jr., St. Louis, MO, for Defendant–Appellant.

Before DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Richard Jellinick challenges the District Court's denial of his motion to vacate a default judgment. Because the District Court did not abuse its discretion in rejecting the motion, we AFFIRM.

I.

In August 1998, Richard Jellinick purchased a piece of property in Jamestown, Kentucky for $155,000. He then insured the property with Capitol Indemnity Corporation for nearly four times that amount. A few days after purchasing this insurance, a fire consumed the property. When Jellinick filed a claim for the full amount of the policy, Capitol complained.

Alleging arson and fraud, Capitol denied Jellinick's claim and filed this lawsuit. Capitol sought (1) a declaratory judgment that Jellinick did not have a right to the insurance proceeds, and (2) damages for the insurance proceeds that had been paid after the fire (to Jellinick's mortgagors). Jellinick counterclaimed for breach of the insurance policy, unfair claims practices, fraud, and defamation.

Early in the case, several discovery disputes required the District Court's involvement. On June 5, 2000, the District Court held a conference call to resolve a dispute over Jellinick's objections to Capitol's interrogatories. The result was an order overruling all of Jellinick's objections and compelling responses within two weeks. Jellinick's counsel, Arthur Muegler, Jr., promised that he could, and would, comply with the District Court's order. He did not, however.

Four months later, on October 5, 2000, the District Court held another telephone conference concerning the status of discovery. The interrogatory responses promised by Muegler in June remained outstanding, as were any responses to a second set of interrogatories that had been served on his client in June. At this point, Muegler informed the District Court that he was being treated for laryngeal cancer and would not have a full voice for several months. Nevertheless, Muegler promised to provide the outstanding discovery within ten days. Mue-

gler also agreed to an October 20th deadline for replacing his current local counsel, who either could not or was no longer willing to work on the case. The District Court issued an order reflecting both deadlines.

Once again, these deadlines passed without any action by Jellinick, Muegler, or local counsel. On October 27, 2000, Capitol moved for a default judgment under Rule 37 of the Federal Rules of Civil Procedure, arguing that Jellinick's failure to provide discovery made it impossible for Capitol to comply with the District Court's scheduling order and that a default was an appropriate sanction. On November 3, 2000, Jellinick's local counsel moved to withdraw, claiming that Muegler had failed, since at least August, to respond to his calls and letters or to keep him informed of the status of the case. An August 25, 2000 letter to Muegler supports that claim.

On November 20, 2000, well after the deadline for a response to Capitol's default motion had passed, the District Court granted the default motion in a written memorandum and order. The District Court found that (1) Muegler's failure to cooperate in discovery was "certainly due to his own fault and perhaps [was] willful"; (2) Capitol was prejudiced by its inability to obtain discovery before the discovery cutoff, which had since passed; and (3) Muegler was given fair warning of the possible consequences of his conduct. The District Court waited another three weeks, while Capitol documented its damages, before entering a judgment of default on December 18, 2000.

On July 10, 2001, Jellinick moved to vacate the judgment under Fed.R.Civ.P. 60(b)(1). Jellinick argued that his counsel's total disability from October 19, 2000, through May 20, 2001, established the requisite "excusable neglect" to grant the motion.

After allowing both parties to submit evidentiary support in the form of affidavits, the District Court denied the motion. The District Court found that Muegler was not, as he and Jellinick claimed, "totally disabled" from October 19, 2001 through May 30, 2001. According to the Court, Muegler had engaged in substantial legal activities during that period, even filing two pleadings in another matter while the default judgment was in the works in this case. Nor, according to the District Court, was there any legitimate excuse for waiting until July 10, 2001 to move to set aside the judgment. This appeal followed.

## II.

Under Fed.R.Civ.P. 60(b)(1), a district court "may relieve a party … from a final judgment," such as the default judgment at issue here, for "excusable neglect." *See Waifersong, Ltd. Inc. v. Classic Music Vending,* 976 F.2d 290, 292 (6th Cir.1992) (holding that, before issuing relief from a default judgment, a court must assess three factors—whether the neglect was excusable, whether the plaintiff will be prejudiced, and whether the defendant has meritorious defenses—the first of which must be satisfied before the others come into play); *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir.1983). Whether "neglect" is "excusable" is an "equitable determination," which considers several factors: the length of the delay, the reason for the delay, whether the movant acted in good faith, the potential impact of the delay on judicial proceedings, and the danger of prejudice to the other party. *Jinks v. AlliedSignal, Inc.,* 250 F.3d 381, 386 (6th Cir.2001). *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (applying these factors

to determine whether "neglect" is "excusable" under Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure).

The District Court considered these factors, and concluded that Muegler's neglect was not excusable. In evaluating that assessment, our task is a modest one—to determine whether the District Court, which had a ring-side view of the proceedings, abused its discretion. *See Manufacturers' Indus. Relations Ass'n. v. East Akron Casting Co.,* 58 F.3d 204, 207 (6th Cir.1995). "[O]nly where there is a definite and firm conviction that the trial court committed a clear error of judgment," *Jinks,* 250 F.3d at 385 (citation and quotation omitted), can that standard be met. No such showing has been made here.

As an initial matter, the law holds Jellinick "accountable for the acts and omissions of [his] chosen counsel"—Mr. Muegler. *Pioneer,* 507 U.S. at 397. The issue, then, is whether Muegler's failure to respond to the motion for default, the order granting it, the affidavit establishing damages, and the entry of judgment (not to mention his local counsel's pleas) was "excusable" because of his illness.

In reaching the determination that counsel's conduct was not "excusable," the District Court did not abuse its discretion for several reasons. For one, the District Court was entitled to conclude that the delays in this case—both before and after Muegler's illness—were not justifiable. Whether or not Muegler's serious illness excused him from opposing Capitol's default motion (or asking for an extension) in November 2000, it offers no excuse for delaying matters until July 2001. Not even Muegler claims to have been disabled beyond May 2001, and at oral argument he acknowledged that he was personally attending to other matters after January 2001. Indeed, in the nine and one-half months between October 27, 2000 (when

Capitol moved for default) and July 10, 2001 (when Muegler reinitiated contact with the District Court by filing a Rule 60(b) motion), Muegler continued to file pleadings and briefs in other cases (on at least a dozen occasions) and to appear in court (on at least four occasions). Although Rule 60(b)(1) gave Muegler one year in which to ask for relief based upon "excusable neglect," the District Court was well within its discretion in finding no excuse for delaying matters far longer than necessary within that year. *See Jinks,* 250 F.3d at 386 ("whether the 'neglect' was excusable involves an equitable determination that takes into account . . . the length of the delay").

So, too, was the District Court entitled to discount Muegler's explanation for the delay. No one can doubt the seriousness of the condition that Muegler faced, and the District Court did not do so. But what defies explanation is Muegler's decision not to involve his local counsel, not to use other counsel (as he did in other cases), or not at a minimum to seek an extension under the circumstances. Instead, on October 5, 2000, he promised that he *would comply* with all outstanding discovery orders and deadlines. Indeed, had Muegler done *anything* to update the District Court about his status during the pendency of Capitol's motion (when he filed a motion in another case), or in between the granting of that motion and the entry of judgment (when he filed an appellate brief in another case), Judge Trauger would have been hard pressed not to grant him relief. But Muegler did not. Neither did he communicate with his by-then-frustrated local counsel, who could have updated the court on his behalf or simply produced the outstanding discovery.

Nor, as the District Court reasoned, did Muegler's materials establish that he suffered the kind of disability that would pre-

vent him from contacting the court, his local counsel, or replacement counsel between late October 2000 and May 2001. The District Court noted that, according to his medical records, Muegler was "doing well" by October 30, 2000, "[h]is voice ... almost back to normal." Those records contain similar reports for late November 2000 and early January 2001. Indeed, by January 15, 2001, he appeared "very healthy." And, all the while, Muegler was well enough to attend to other cases on his own or through colleagues that he contacted.

The District Court was also entitled to find that Muegler's conduct "d[id] not evidence the good faith required for a finding of excusable neglect." Twice the District Court ordered Muegler to cooperate in discovery, and twice he disregarded the court. Muegler waited months longer than necessary to file his Rule 60(b) motion. He never contacted the court or local counsel, or arranged for replacement counsel, all while attending to other cases. When Capitol denied ever having been served with the Rule 60(b) motion (be-

cause, it turns out, the motion went to the wrong zip code), the District Court ordered Muegler to file a statement under oath concerning the circumstances. When the deadline for doing so passed without anything from Muegler, it took still another court order threatening contempt to get Muegler to comply. As for good faith, Muegler had little capital to draw upon; it was, after all, his pre-illness disregard for this case and the District Court's orders that gave rise to a motion for default in the first instance. All things considered, the District Court did not abuse its discretion in denying the Rule 60(b) motion.

### III.

For these reasons and those set forth in the opinion of the District Court, we AFFIRM.