<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 13a0575n.06

Nos. 12-5739/12-6042/12-6230

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBERT T. STOOKSBURY, JR.,

     Plaintiff- Appellee,

v.

MICHAEL L. ROSS, dba Rarity Pointe Realty, dba Rarity Realty; LTR PROPERTIES, INC.; RPL PROPERTIES, LLC; LC DEVELOPMENT COMPANY, LLC; RARITY COMMUNITIES, INC.; TELLICO LAKE PROPERTIES, L.P.; TELLICO COMMUNITIES, INC.; NICKAJACK SHORES HOLDINGS, LLC; RARITY INVESTMENT COMPANY, LLC; RARITY CORPORATION; RARITY MANAGEMENT COMPANY, LLC; RARITY RIDGE CLUB, INC.; RARITY CLUB CORPORATION; RARITY PROPERTY MANAGEMENT, Inc.; BROADBERRY DEVELOPMENT COMPANY, LLC; HIAWASSEE PROPERTIES LLC; RM COMPANY, LLC; LOM DEVELOPMENT COMPANY, LLC; VPI COMPANY, LLC; REBECCA ROSE ROSS JORDAN; PATRICIA ROSS, as Personal Representative of the Estate of Dale Ross,

     Defendants- Appellants,

and

GREGORY BAKER, et al.,

     Defendants.

_____/

FILED
*Jun 13, 2013*
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

**BEFORE:    CLAY and COOK, Circuit Judges; and OLIVER, District Judge.**[*]

**CLAY, Circuit Judge.**  Defendants Michael L. Ross, the estate of his late brother, and their associates and business entities, (collectively "Ross Defendants"), appeal from the district court's denial of their motions for a directed verdict and new trial after a jury awarded Plaintiff Robert Stooksbury, Jr., over $36 million in damages on his federal claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, and his state claims of fraud and breach of fiduciary duty under Tennessee law.  The Ross Defendants challenge the district court's entry of default judgment against them as a discovery sanction, its failure to grant their pre-trial motions to dismiss on standing grounds, and its failure to grant their post-trial motions for judgment of acquittal and a new trial similarly on standing grounds.  Intervening Defendant, Athena of SC, LLC ("Athena"), appeals from the district court's subsequent judgments in which the court granted Plaintiff's motions for preliminary injunction, enjoining Athena from foreclosing on its security interest in some of the Ross Defendants' real property.

For the following reasons, we **AFFIRM** the district court's orders denying the motions for judgment as a matter of law or a new trial and enjoining Athena from foreclosing on the real property.

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

## BACKGROUND

**A.      Factual Background**

The following facts were established by Plaintiff's first amended complaint.   Between January 2004 and June 2009, the Ross Defendants operated a fraudulent real-estate enterprise through various sham entities, including named defendant entities, controlled by Defendant Michael Ross and his late brother.  As part of this conspiracy, Ross, through his solely owned company, LTR Properties, Inc. ("LTR"), established Tellico Landing, LLC ("Tellico"), to develop and market property called Rarity Bay, which had been purchased from Plaintiff and his associate.  Plaintiff invested as a minority partner in Tellico, owning 25% of the company, while Ross maintained a 50% stake.  However, Tellico, unbeknownst to Plaintiff, was used as yet another instrument in Ross's illegal enterprise.  Only after Plaintiff filed for Tellico's dissolution, leery of Ross's reluctance to disclose financial information, did he discover the existence of the enterprise.

The Ross Defendants' enterprise materially misrepresented and falsely advertised the amenities and value of Rarity Bay, and other properties, to increase sales; conducted fraudulent transactions and insider deals between the Ross Defendants and their associates to inflate property values; and co-mingled and converted Tellico funds for personal use and to facilitate their enterprise. This conduct resulted ultimately in a crash in property values that injured investors, including Plaintiff.  Plaintiff specifically claimed that Tellico was a sham entity, i.e., an alter ego of Ross, and that the RICO scheme caused him to unknowingly contribute capital to the criminal enterprise; and that he suffered losses from the sales of property that were not disclosed to him, a crash in property

values, and conversion of his funds and profits by the Ross Defendants for personal use or to further the enterprise.

## B.    Procedural History

### 1.    The RICO Litigation

In November 2009, Plaintiff filed the instant action in district court against the Ross Defendants alleging violations of RICO, 18 U.S.C. § 1962(a)–(d), and fraud and breach of fiduciary duty under Tennessee law.  After the claims under § 1962(a) and (b) were dismissed, a scheduling order set trial on the remaining claims for April 2011.  Shortly thereafter, in August and September 2010, Plaintiff served discovery requests on the Ross Defendants.  However, between the fall of 2010 and January 2012, the Ross Defendants were found to have frustrated discovery in this case (as well as in contemporaneous state litigation).[1]

The Ross Defendants violated a June 2011 discovery order by failing to respond to Plaintiff's discovery requests and interrogatories from the previous year.  Plaintiff moved for sanctions, and after a hearing on Plaintiff's motion in September 2011, the magistrate judge recommended the entry of default judgment.  The magistrate judge found that the Ross Defendants had a "total lack of forthrightness" in refusing to comply with the discovery order, respond to the district court's inquiries, or provide an explanation for their admitted noncompliance.  (R. 185, Report & Recommendation, PID# 2679–82.)  Additionally, the near 40,000-page discovery submission was

---

[1]A Tennessee trial court, in August 2011, sanctioned the Ross Defendants that were parties to that litigation for their "contumacious conduct" and intentional delay after finding that a near 40,000-page discovery submission was unresponsive, lacked basic information, such as tax returns and financial statements, and prejudiced Plaintiff.  (R.291, Ex.7, PID# 4001).

an unresponsive "document dump" that also failed to include Bates stamp numbers as required. (*Id.* at PID# 2680.) The magistrate judge concluded that the Ross Defendants' conduct "amount[ed] to bad faith and a willful decision not to cooperate in discovery." (*Id.*)

In November 2011, over Defendants' objections and claims that they were not informed by counsel of the discovery failures, the district court adopted the magistrate judge's findings as to the lack of forthrightness and bad faith, but declined to enter a default judgment. Instead, the district court imposed sanctions for attorneys' fees and costs and granted the Ross Defendants an additional ten days to comply with the June 2011 discovery order. The district court warned the Ross Defendants that "failure to so comply may result in the imposition of further sanctions, including entry of default." (R.209, Order, PID# 2982.)

Notwithstanding these warnings, the Ross Defendants filed supplemental responses that were still unresponsive; they included boilerplate objections and failed to provide basic accounting documents or Bates stamp references for the earlier document dump. Plaintiff renewed his motion for default judgment. The district court, on January 30, 2012, entered a default judgment against Defendants on all claims after going through the relevant factors established in *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067 (6th Cir. 1990), to find that: 1) Defendants acted willfully in failing to comply with the discovery orders; 2) Plaintiff was prejudiced thereby; 3) Defendants were fairly warned of the possibility of a default judgment; and 4) less drastic sanctions, like the fees previously imposed, would be unavailing. The district court denied the Ross Defendants' later motions to set aside the default judgment on the basis that Defendants could not prove that their discovery abuses resulted from excusable neglect.

Defendants then filed a Federal Rule of Civil Procedure 12(b)(7) motion to dismiss for "failure to join a Rule 19 party or for lack of standing." Defendants claimed that Plaintiff lacked RICO standing because his injury was merely derivative as a minority partner in Tellico, the true victim of the alleged RICO scheme. That motion was denied as untimely.

The factual allegations in the complaint were accepted as true per the default judgment, and thus trial commenced on February 21, 2012, solely on the issue of damages. In the first phase of trial, concerning compensatory damages, the Ross Defendants called no witnesses and presented no evidence. The jury awarded Plaintiff over $3.5 million on the RICO violations and $11.3 million for the state-law claims, jointly and severally against the Ross Defendants. In the second phase of trial, the jury awarded punitive damages in varying amounts against several of the Ross Defendants, totaling $15 million. The district court thereafter trebled the compensatory RICO damages pursuant to 18 U.S.C. § 1964(c), thereby increasing that portion of the award to $10.64 million.

The Ross Defendants moved for a directed verdict and a new trial under Rules 50(b) and 59, respectively. They challenged the entry of default judgment, the subsequent denial of their motion to set aside the default judgment, Plaintiff's RICO standing, and the evidentiary basis on which the jury awarded RICO damages. The district court denied the motions, finding, in relevant part: 1) Defendants' claims that they complied with discovery lacked merit; and 2) Plaintiff's amended complaint sufficiently established RICO standing in that he was directly and proximately injured by the Ross Defendants' RICO predicate acts independent of Tellico. The Ross Defendants timely appealed.

## 2.    Preliminary Injunctions

During the above-described discovery abuses, in September 2011 (around the time of the magistrate judge's recommendation of a default judgment), the Ross Defendants began conveying millions of dollars' worth of assets to various entities controlled by Defendant Michael Ross's associate, Ted Doukas. One of the entities to which assets were conveyed was intervening defendant, Athena. Specifically, at issue on appeal is Athena's secured interest in Rarity Bay condominiums and lots, owned respectively by two Ross Defendants, LTR and Tellico Lake Properties, LP ("TLP"). SunTrust Bank transferred notes that encumbered the real property, (the "SunTrust notes"), to a non-party, Tennessee Land and Lakes ("Tennessee Land"), who in turn transferred the notes to Athena through what appeared to be a facially valid deed of trust. Athena later sought to foreclose on its interest in the real property.

On April 19, 2012, Plaintiff moved the district court to bar the Ross Defendants from transferring their assets and for the court to appoint a receiver. He later moved to enjoin Athena's foreclosure on LTR's condominiums pending the receiver's report. A magistrate judge granted the motion for a receiver after determining that Plaintiff had a valid claim resulting from the jury verdict; that fraudulent conduct had likely occurred, and would likely continue to occur, to frustrate Plaintiff's claim if the court did not appoint a receiver; that there was an imminent danger that property would diminish in value or be lost in transfers, particularly in conveyances to Athena; and that other legal and equitable remedies would be insufficient to protect Plaintiff's interest. The district court thereafter granted the motion to enjoin Athena's foreclosure on the LTR condominiums until a receiver could determine the proper disposition of the Ross Defendants' assets. The

injunction was granted for many of the same reasons stated by the magistrate judge, and particularly in light of the timing of various transfers to Athena and other entities owned by Doukas, which suggested that Athena was acting in concert with the Ross Defendants to conceal property. Athena moved to vacate the injunction, which the district court denied.

A couple months later, Plaintiff moved for a second injunction to enjoin Athena from foreclosing on the Rarity Bay lots owned by TLP, pending completion of the Receiver's report. After finding that the SunTrust notes encumbering TLP's lots were related to the series of transactions—including the transfer and attempted foreclosure of LTR's condominiums—already found likely to be fraudulent, the district court granted the second motion for an injunction. Athena timely appealed both injunctive orders.

## DISCUSSION

We take in turn below each of the claims on appeal to find that the district court did not err in: 1) entering the default judgment or denying Defendants' motion to set it aside; 2) denying the Rule 12(b)(7) motion; 3) finding that Plaintiff had established standing and proximate cause to support the jury award; and 4) enjoining Athena from foreclosing on the real property owned by LTR and TLP pending the Receiver's report.

## I.     Default Judgment

### A.     Standard of Review and Applicable Law

We review for an abuse of discretion the order of a default judgment pursuant to Federal Rule of Civil Procedure 37, *Bank One*, 916 F.2d at 1073, and the denial of a motion to set aside default pursuant to Rule 60(b), Burrell v. Henderson, 434 F.3d 826, 831 (6th Cir. 2006). While "[j]udgment

by default is a drastic step which should be resorted to only in the most extreme cases," *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983), the district court does not abuse its discretion in entering a default judgment where a "party has the ability to comply with a discovery order and does not," *Bank One*, 916 F.2d at 1073 (quoting *Reg'l Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988)). In reviewing the default judgment order, we consider: 1) whether the defaulting party's failure to cooperate with discovery was willful and in bad faith as opposed to an inability to cooperate; 2) whether the adversary was prejudiced; 3) whether the defaulting party was warned that his failure to cooperate could lead to a default judgment; and 4) whether less drastic sanctions were imposed or considered before the default judgment was ordered. *Id.*

### B. Analysis

In the instant case, the Ross Defendants assert first that they substantially complied with the discovery order as demonstrated by the near 40,000-page discovery submission, and second, that the district court should have imposed a less-severe sanction. The record demonstrates that both contentions lack merit. The magistrate judge and district court (as well as the state court) found that the discovery submission was merely a document dump of mostly unresponsive information and that the Ross Defendants failed to provide even the most basic accounting information, such as tax returns, financial statements, and bank records. Moreover, the Ross Defendants failed to comply with two discovery orders, i.e., the June and November 2011 orders, which required them to identify the documents produced by Bates stamp numbers and complete the discovery that was requested more than one year earlier. Further, their counsel admitted their noncompliance with respect to the

9

June order before the magistrate judge.  Thus, the contention that they substantially complied is simply belied by the record.

To their second point, we find that the district court properly established all of the *Bank One* factors to support the entry of default judgment.  For the first factor, willful conduct and bad faith, the magistrate judge detailed how the Ross Defendants lacked forthrightness, failed to directly respond to the Court's inquiries about the discovery matters, offered no explanation for their lack of compliance, and demonstrated "bad faith and a willful decision not to cooperate in discovery." (R.185, at PID# 2680.)  Further, this finding was bolstered by the Ross Defendants' continued failure to comply after the district court granted them a 10-day extension or respond to Plaintiff's renewed motion for default judgment.

Turning to the second factor, prejudice to Plaintiff, the district court noted that the discovery dispute had been ongoing for over a year despite the Plaintiff's efforts and the court's intervention, and that two continuances had already been granted, thus delaying the proceedings.  The discovery abuses imposed excessive costs on Plaintiff, who had to sort through the document dump, and undermined Plaintiff's proof on the issue of liability.  Indeed, the trial was less than a month away when the district court was forced to enter default judgment on Plaintiff's motion that the Ross Defendants failed to even contest.

Finally, turning to the third and fourth *Bank One* factors, whether the Ross Defendants were fairly warned and whether less-severe sanctions were considered, we find that both were established. The Ross Defendants' first warning arguably came from the magistrate judge whose recommendation of a default judgment for their discovery abuses was not accepted by the district

10

court. If that was not a clear indication that a default judgment was possible, the district court, after entering a less-severe sanction for the violation of the June discovery order, specifically warned the Ross Defendants that a default judgment could result from continued noncompliance. Despite the fair warning and imposition of a less-severe sanction, the Ross Defendants failed to comply with the ten-day extension or explain why they did not comply. It appears that the Ross Defendants forced the district court's hand in ordering the default judgment; therefore, we find no abuse of discretion. *See Bank One*, 916 F.2d at 1078–79.

**C.     Rule 60(b) Motion**

With respect to the claimed error in the district court's denial of the Rule 60(b) motion, the Ross Defendants place blame on their attorneys, alleging that they were unaware of the discovery failures and Plaintiff's renewed motion for default judgment. Even assuming this to be true, which is belied by the record, the Ross Defendants' claim does not justify setting aside the default judgment. Although this Court is reluctant to uphold a default judgment on account of an errant attorney, *Buck v. United States Dep't of Agric.*, 960 F.2d 603, 608–09 (6th Cir. 1992), clients are generally liable for the acts and omissions of their counsel, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 396–97 (1993). The discovery abuses here did not amount to "mistake, inadvertence, surprise, or excusable neglect" so as to justify relief under Rule 60(b)(1). *See Capitol Indem. Corp. v. Jellinick*, 75 F. App'x 999, 1001–03 (6th Cir. 2003). And while the district court may exercise its discretion to grant relief under Rule 60(b)(6) where, despite the counsel's inexcusable conduct, the moving party "displayed reasonable diligence in attempting to discover the status of his case," *Fuller v. Quire*, 916 F.2d 358, 361 (6th Cir. 1990), there is no evidence that such

11

was the case here. What we have here is a "clear record of delay," nearly one and a half years to be precise, and findings of "contumacious conduct" such that the entry of default judgment was warranted in this case. *Buck*, 960 F.2d at 608.

In sum, we find that the district court did not abuse its discretion in entering the default judgment or denying the Rule 60(b) motion.

## II. 12(b)(7) Motion - RICO Standing versus Article III Standing

The Ross Defendants' next claim of error is that the district court improperly denied their Rule 12(b)(7) motion as untimely when it raised the issue of RICO standing after the entry of default judgment. Such a determination would undoubtedly be erroneous if the motion raised jurisdictional challenges, which can be raised at any time. *See Arbaugh v. Y&H Corp*., 546 U.S. 500, 508, 514 (2006). The Ross Defendants assert that RICO standing is jurisdictional such that the district court was required to consider the argument at any time during the litigation. They apparently confuse the statutory standing requirements of RICO, under 18 U.S.C. § 1964(c), with Article III standing. Article III standing, which requires a "concrete and particularized" injury to be "fairly traceable" to the defendant's conduct and be redressable, *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010), is less onerous than RICO standing, which requires that the injury be directly caused by the defendant's predicate acts, *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003). In conflating the two requirements, the Ross Defendants fail to adequately explain why RICO standing should be construed as jurisdictional. Our review of the case law leads us to conclude that, contrary to Defendants' conclusory assertion, RICO standing is not jurisdictional.

In recent years, the Supreme Court has urged courts to refrain from labeling rules as jurisdictional "[b]ecause the consequences that attach to the jurisdictional label may be so drastic." *Henderson ex rel. Henderson v. Shinseki*, — U.S. —, 131 S.Ct. 1197, 1202 (2011). Indeed, courts are obliged to raise jurisdictional matters *sua sponte* and jurisdictional rules defy all time limits established for raising various matters in a litigation, and can prejudice a prevailing party and waste judicial resources when considered after a case has been resolved. *Id.* Thus, "[n]ot all mandatory 'prescriptions, however emphatic, are . . . properly typed 'jurisdictional.''" *Union Pac. R.R. Co. v. Brotherhood of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009) (quoting *Arbaugh*, 546 U.S. at 510 (internal quotation marks omitted)). Only those "delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority" should be classified as "jurisdictional." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

In *Arbaugh*, the Court established a "readily administrable bright line" test for assessing whether statutory requirements, such as RICO standing, are jurisdictional:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue . . . . But when Congress does not rank a statutory limitation on a coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character.

546 U.S. at 515–16 (footnote and citation omitted).

Section 1964(c) lacks any language which suggests that the direct injury requirement is jurisdictional. *See* 18 U.S.C. § 1964(c). Further, it is not a delineation of the persons or classes of cases falling under the court's power. *See Kontrick*, 540 U.S. at 455. Rather, Congress expressly used subsection (a) instead to define the class of cases falling within the federal courts' adjudicatory

authority. *See* 18 U.S.C. § 1964(a) ("The district courts of the United States shall have jurisdiction to prevent and restrain [RICO] violations . . . by issuing appropriate orders . . . ."). Moreover, RICO standing, particularly the issue of proximate cause, is sufficiently intertwined with the merits, which also counsels against considering the question to be jurisdictional in nature. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 & n.2 (1998); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129–30 (2d Cir. 2003). Accordingly, we must disagree with the Ross Defendants and find that RICO standing is a non-jurisdictional issue.

This conclusion aligns with our precedent where, although we have not explicitly ruled on the issue, we have treated RICO standing as a non-jurisdictional matter. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612–15 (6th Cir. 2004) (treating as distinct issues subject matter jurisdiction and RICO standing necessary for stating a claim). We also find support in the cases of our sister circuits that have either explicitly or implicitly found RICO standing to be non-jurisdictional. *See, e.g.*, *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 & n.7 (9th Cir. 2008) (noting that RICO standing is non-jurisdictional where Article III standing is already established); *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) ("Civil RICO 'standing' is usually viewed as a 12(b)(6) question of stating an actionable claim, rather than as a 12(b)(1) question of subject matter jurisdiction."); *Lerner*, 318 F.3d at 129 (collecting cases). *But see Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006) (finding that the causation and injury requirements of RICO were jurisdictional requirements).

Consequently, because Plaintiff's RICO standing, i.e., whether his injury was sufficiently direct under 18 U.S.C. § 1964(c), is non-jurisdictional, the proper question is whether the district

14

court abused its discretion in finding the Ross Defendants' 12(b)(7) motion untimely. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (reviewing for an abuse of discretion a district court's denial of motion to amend on untimeliness grounds under Rule 16(b)); *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (reviewing for an abuse of discretion dismissal for noncompliance with local rules). We find that it did not. The motion was not only well past the deadline for dispositive motions, but the entry of default judgment barred any merits-based challenges insofar as Plaintiff's complaint sufficiently pleaded RICO standing. *See United States v. Conces*, 507 F.3d 1028, 1038–39 (6th Cir. 2007).

## III.    Plaintiff's Pleading of RICO Standing

### A.    Standard of Review

We review *de novo* the district court's denial of a motion for judgment as a matter of law. *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 391–92 (6th Cir. 2008). Applying the same deferential standard as the district court, we will reverse the lower court only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[2] Fed. R. Civ. P. 50(a). That is, "when viewed in the light of those inferences most favorable to the nonmovant, there is either complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 488–89 (6th Cir. 2010) (citation and internal quotation marks omitted). Where the review of the merits arises

---

[2]Because our review of a Rule 59 motion for a new trial on reasonableness grounds is substantially similar yet more deferential, *Balsley v. LFP, Inc.*, 691 F.3d 747, 761 (6th Cir. 2012), we rely on our analysis above if the Ross Defendants cannot prevail on Rule 50(b) grounds. Additionally, the standard for a directed verdict under Tennessee law is also substantially the same as the federal standard. *Culver v. CCL Label, Inc.*, 455 F. App'x 625, 627 n.2 (6th Cir. 2012).

from a default judgment, the question becomes whether the complaint sufficiently pleaded facts to establish liability. *See Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 406 (6th Cir. 2010). We find, as the district court did, that Plaintiff sufficiently pleaded RICO standing for the jury's award of damages.

**B.      Applicable Law**

In order to establish RICO standing, a plaintiff must show (1) a violation of § 1962, (2) an injury to his business or property, and (3) that his injury was proximately caused by the RICO violation. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268–69 (1992); *see also* 18 U.S.C. § 1964(c). The Ross Defendants argue that Plaintiff has failed to establish the third prong, which requires a plaintiff to show that he suffered a direct injury as opposed to a remote "harm flowing merely from the misfortunes visited upon a third person" or entity. *Holmes*, 503 U.S. at 268; *accord Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003). The misfortune suffered by a shareholder—i.e., diminution in corporate assets and depleted share values—when a company falls victim to RICO violations is typically too remote to confer RICO standing on that shareholder. *See e.g.*, *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 487 (6th Cir. 1992); *Warren v. Mfrs. Nat'l Bank*, 759 F.2d 542, 544 (6th Cir. 1985). Defendants contend that Plaintiff was merely a partner in Tellico who suffered injuries only derivative of Tellico's losses.

**C.      Analysis**

Although Plaintiff pleaded that, by virtue of the predicate acts, Tellico's value was depleted, he also pleaded a direct injury. Separate and apart from just depleted value in investment, Plaintiff established that Ross used Tellico as his alter ego to further the Ross Defendants' criminal enterprise

16

of materially misrepresenting and artificially inflating property values and caused Plaintiff to unknowingly contribute capital and resources to the enterprise's scheme, resulting in the misappropriation of Plaintiff's funds and profits. State law may be used to confer RICO standing on an otherwise improper plaintiff. *See Whalen v. Carter*, 954 F.2d 1087, 1093 (5th Cir. 1992) (applying state law exception to bar on derivative suits to confer RICO standing on limited partner). Under Tennessee law, the corporate entity is generally disregarded particularly where the "separate corporate entity 'is a sham or a dummy'" or where "necessary to accomplish justice." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88–89 (Tenn. 2010) (citation omitted). Plaintiff's first amended complaint established that Tellico was Ross's alter ego, and as such, the entity was a nullity; there was no basis for bringing a suit on its behalf. *Cf. Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 960 (7th Cir. 1996) (finding limited partner established RICO standing where the partnership was dissolved). Moreover, if Tellico was joined, as the Ross Defendants suggest, Ross would effectively be expected to "vindicate the law" against himself and could potentially be apportioned an award of damages against himself. *See Holmes*, 503 U.S. at 269–70. Such an outcome would be untenable.

In sum, Plaintiff sufficiently pleaded that he, independent of Tellico, was injured by the conspiracy. The district court properly denied the post-trial motions for judgment as a matter of law and a new trial.

## IV. Preliminary Injunctions

Finally, we turn to the appeal by the intervening defendant, Athena. Athena challenges the district court's injunctions barring Athena from foreclosing, as a secured creditor, on real property

owned by Defendants LTR and TLP. Athena primarily argues that there was no evidence that the deed of trust, which transferred the SunTrust notes encumbering the real property from Tennessee Land to Athena, was invalid. We find that the district court did not abuse its discretion when it granted the preliminary injunctions.

## A.        Standard of Review and Applicable Law

In determining whether the movant has met his burden for injunctive relief, we must balance the following factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

The first factor—likelihood of success—is distinctly a question of law reviewed *de novo*, while the ultimate determination to grant a preliminary injunction, after weighing the factors, is reviewed for an abuse of discretion. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007). This "highly deferential" standard permits us to disturb the district court's ultimate determination "only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Id*. (citations and internal quotation marks omitted).

**B.      Analysis**

**1.      Factor One - Likelihood of Success**

This factor weighs in favor of granting the motion if the plaintiff "shows more than a mere possibility of success" and, instead, "raise[s] questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).  However, "a party is not required to prove his case in full at a preliminary injunction hearing" as the evidence "is less complete than a trial on the merits." *Certified Restoration*, 511 F.3d at 542 (citation and internal quotation marks omitted); *see also In re Eagle-Picher Indus., Inc.*, 963 F.2d 855 (6th Cir. 1992) (holding that the district court did not err in granting a preliminary injunction where it relied primarily on the three non-likelihood factors).

Athena urges, in vain, that we consider in isolation its acquisition of the SunTrust Bank notes because Plaintiff has not proven that the facially-valid deed of trust was illegitimate.  However, the validity of the transfers cannot be considered in a vacuum.  On less than complete evidence, Plaintiff need only proffer sufficient evidence to raise serious questions about the legitimacy of the transfer to Athena.  *See Certified Restoration*, 511 F.3d at 542; *Six Clinics*, 119 F.3d at 402.  We find that Plaintiff met his burden.  Plaintiff's uncontested proof established that Doukas, sole owner of Athena, was Ross's associate who once shared office space with him; and that Doukas acquired personally and through his entities millions of dollars' worth of assets from several of the Ross Defendants shortly after the magistrate judge in the underlying RICO action recommended entry of default judgment.  At least one of those transfers, for property owned by another Ross Defendant,

appeared to be without consideration because payment for the properties were to be made by another Doukas entity, American Harper Corp., to Athena. And the record demonstrated that, shortly before the SunTrust note transfers, Tennessee Land entered a cooperation agreement with two of the Ross Defendants, in which it agreed to transfer to Athena its security interest in other properties owned by the Ross Defendants for no monetary consideration.

Thus, while not conclusively disproving Athena's claim that its acquisition of the SunTrust notes was above board, this evidence, albeit circumstantial, raises a strong inference that Tennessee Land and Athena collaborated with Defendant Ross and several of the defendant entities to transfer assets to Doukas, through Athena and his other entities.[3] Accordingly, this factor weighs in favor of granting the preliminary injunction.[4]

### 2.      Factors Two and Three - Balancing the Harms

The district court found that Plaintiff would suffer irreparable harm because Plaintiff would not be able to enforce the RICO judgment against Defendants LTR and TLP if Athena was permitted to foreclose on the Rarity Bay condominiums and lots encumbered by the SunTrust notes. The district court did not clearly err in this determination since courts have the inherent authority to

---

[3]The Receiver later confirmed the district court's suspicions, finding that Tennessee Land served as a "surrogate" purchaser of the SunTrust notes for Athena because Athena financed Tennessee Land's purchase of the SunTrust notes and Defendant Ross benefitted because the deal permitted him to continue running the Rarity Bay development.

[4]Additionally, in light of the above analysis, the district court properly concluded that the evidence demonstrated that Athena probably acted in concert with the Ross Defendants so as to bind Athena to its ruling under Rule 65(d)(2). *See Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F.3d 568, 574 (6th Cir. 2001) ("[A] decree of injunction not only binds the parties defendant but also those identified with them in interest[ or] in 'privity' with them.") (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)).

preserve property that may be the subject of a final decree. *See USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982). Moreover, assuming the transfer to Athena was valid, the risks of delay in the foreclosure proceedings were adequately covered by the bond the district court ordered Plaintiff to pay. There was no harm to Athena's interest that was not adequately protected by the bond, whereas Plaintiff's interest in recovering from LTR and TLP would have been largely unprotected absent an injunction. Accordingly, we find that the district court properly weighed these factors in Plaintiff's favor.

### 3. Factor Four - The Public Interest

The district court weighed the public interest of permitting secured creditors to foreclose on their security interests against the interest in preventing defendants from thwarting court judgments and found that the injunction adequately served both. The Receiver will be able to evaluate the foreclosure and protect the Ross Defendants' assets while ensuring compliance with the judgment. We find no error in this conclusion; this factor was properly weighed in Plaintiff's favor.

In sum, after reviewing the record and considering the relevant factors, there is no evidence that the district court abused its discretion in ordering the preliminary injunctions pending the Receiver's report.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's orders denying the motions for judgment as a matter of law or a new trial and enjoining Athena from foreclosing on the real property.