NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0929n.06

No. 12-2217

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| HURON MOUNTAIN CLUB, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Oct 30, 2013 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS; | ) | |
| MICHAEL C. DEROSIER; UNITED STATES | ) | |
| DEPARTMENT OF THE INTERIOR; KEN SALAZAR; | ) | |
| UNITED STATES FISH AND WILDLIFE SERVICE; | ) | ON APPEAL FROM THE |
| DANIEL M. ASHE; KENNECOTT EAGLE | ) | UNITED STATES DISTRICT |
| MINERALS COMPANY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |

**BEFORE: GIBBONS and WHITE, Circuit Judges; GREER, District Judge.**[*]

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Huron Mountain Club ("HMC")

appeals the district court's denial of its motion for injunctive relief, which sought to enjoin

Kennecott Eagle Minerals Company ("Kennecott") from constructing and operating the Eagle Mine

("Eagle Mine" or "the Mine"), a nickel and copper mine in Marquette, Michigan, and compel the

United States Army Corps of Engineers[1] (the "Corps") to "administer" the federal permitting

---

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

[1]HMC also named the United States Department of the Interior, and the United States Fish
and Wildlife Service ("FWS"), Michael Derosier, District Commander for the Detroit District Corps;
Ken Salazar, Secretary of the Department of the Interior; and Daniel Ashe, Director of FWS, in their
official capacities (collectively, "Federal Defendants").

programs under the Rivers and Harbors Act ("RHA"), 33 U.S.C. § 403, and the Clean Water Act ("CWA"), 33 U.S.C. § 1344. We AFFIRM.

**I.**

Huron Mountain Club is a Michigan not-for-profit corporation formed as a retreat and wildlife preserve. HMC owns approximately 19,000 acres in an area known as the Yellow Dog Plains of Marquette County. This land includes an eleven-mile stretch of the Salmon Trout River ("STR"), which empties into Lake Superior on the northwest corner of HMC's property.

Eagle Mine, a nickel and copper mine development, is located approximately 3.38 miles upstream from HMC. The Eagle Mine site is owned by Kennecott, which is in the process of constructing both surface and underground facilities over approximately 92 acres. Eagle Mine is expected to produce approximately 230 million pounds of nickel, 230 million pounds of copper, and minor amounts of other minerals. Part of the mining will take place beneath the STR and its corresponding wetlands.

In February 2006, Kennecott took the first steps towards its proposed mining development by submitting a "Part 632" permit application for non-ferrous metallic mining to the Michigan Department of Environment Quality ("MDEQ"), the state agency charged with issuing environmentally related permits under state law. The permit application included an Environmental Impact Assessment (EIA) and a detailed plan for mining and reclamation. Kennecott also submitted applications for groundwater-discharge and air-use permits. In December 2007, after a series of public hearings that included HMC's objections to the project and agency review, the MDEQ granted Kennecott Part 632 mining, groundwater-discharge, and air-use permits. HMC, along with

other parties, petitioned for a contested case hearing regarding the Part 632 mining and groundwater-discharge permits. After 42 days of testimony over a two-year period, the ALJ ruled in favor of Kennecott, finding that Eagle Mine would not affect the STR or corresponding wetlands and was not at risk for collapse. In January 2010, the MDEQ issued its Final Determination and Order directing that Kennecott's Part 632 permit be issued. *In re Permits Issued to Kennecott Eagle Minerals Co.*, Nos. GW1810162 & MP 01 2007, 2010 WL 276664 (Mich. Dept. Nat. Res. Jan. 14, 2010). HMC and its co-petitioners appealed the order to the Ingham County Circuit Court, which affirmed the MDEQ's decision to grant Kennecott the Part 632 permit. On November 21, 2011, the Ingham County Circuit Court affirmed MDEQ's decision to grant Kennecott's Part 632 permit. *Nat'l Wildlife Fed'n v. Mich. Dep't of Envtl. Quality*, No. 11-123-AA (Mich. Cir. Ct., Ingham Cnty. Nov. 21, 2011). HMC and the other Petitioners filed applications for leave to appeal with the Michigan Court of Appeals. The court granted those applications and, at the time of briefing in this action, the Petitioners were awaiting argument.

Kennecott began construction of its surface facilities in April 2010 and began underground construction in September 2011. As of April 2012, Kennecott had invested $331 million in the Eagle Mine project, and employed 296 people at the mine site, the mill, and the main office facilities. Kennecott estimates that it will invest an additional $1 billion in the Eagle Mine project during construction and operation of the mine. Kennecott has not applied to the Corps or any other federal agency for a federal permit for the project and no federal agency, including the Corps, has brought any type of enforcement action against Kennecott related to the Eagle Mine.

On May 6, 2012, HMC filed this action for preliminary injunctive relief against the Federal Defendants under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, and the Mandamus and Venue Act ("Mandamus Act"), 28 U.S.C. § 1361. HMC sought an order compelling the Corps to "fulfill its permitting responsibilities" under the RHA and CWA by requiring Kennecott to "submit to permitting procedures and requirements." HMC further sought injunctive relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a), or the court's "inherent powers" prohibiting Kennecott's continued construction or operation of the Eagle Mine without first submitting to the federal permitting procedures of the RHA and CWA. The district court denied HMC's request for a preliminary injunction and HMC timely appealed.

**II.**

We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1292, which allows parties to appeal interlocutory orders denying a request for an injunction. *See* § 1292(a)(1). When determining whether to issue a preliminary injunction a court must consider: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (citation omitted). We review the district court's decision to deny HMC's request for a preliminary injunction for an abuse of discretion, deferring to the court's findings of fact unless they are clearly erroneous, and reviewing its legal conclusions de novo. *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 277 (6th Cir. 2001) (citation omitted). The court's determination

regarding HMC's likelihood of success on the merits is a question of law that is reviewed de novo. *Babler v. Futhey*, 618 F.3d 514, 520 (6th Cir. 2010). "However, the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed for abuse of discretion." *Id.* (quoting *Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007)).

## III.

Although HMC seeks to compel the Corps to act under the RHA and CWA, HMC did *not* bring a citizen suit against Kennecott under the CWA. *See* 33 U.S.C. § 1365(a)(1) ("[A]ny citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of an effluent standard or limitation under this chapter [the CWA] . . . .").[2] Instead, HMC brought this action under the APA and Mandamus Act, alleging that the Corps' "decision" not to "fulfill its permitting responsibilities" in regard to Kennecott's purported violations of the RHA and CWA is reviewable by the court. "When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004).

We first consider HMC's likelihood of success on the merits against the Corps. The APA provides a right of judicial review for "agency action" made reviewable by another statute. *See* 5 U.S.C. §§ 702, 704, 706. Beyond providing a party the ability to challenge actions that an agency has already taken, the APA also permits a party to *compel* agency action that is "unlawfully withheld

---

[2]A private right of action is not available under the RHA.

or unreasonably delayed." *Id.* § 706(1). However, claims against an agency for a failure to act are available only under limited circumstances; specifically, "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 63 (2004) (emphasis in original); *see* 5 U.S.C. § 701(a)(2) (judicial review unavailable where the "agency action is committed to agency discretion by law").

HMC's request for review of the Corps' purported "inaction" is not likely to succeed because HMC has not shown that the RHA and CWA dictate any "discrete action" the Corps is "required" to take with regard to parties who have not submitted RHA and CWA permit applications and in the absence of a request for a jurisdictional determination. *See SUWA*, 542 U.S. at 63. Section 10 of the RHA provides:

> [I]t shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor or refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

33 U.S.C. § 403. HMC asserts that this text imposes a plainly-stated duty on the Corps to issue permits before any person can engage in regulated activity. Appellant's Br. at 45. However, the language of section 10 reveals no such duty, plainly stated or otherwise. The statute does not require the Corps to order the filing of a permit application when an individual engages in work that could be subject to the RHA. Instead, as the district court found, the burden under section 10 is on the individual or entity doing work that is potentially regulated by the RHA, who proceeds without a

permit at its own peril. Section 10 does not direct the Corps to seek out individuals who might be violating the RHA and, as HMC acknowledges, "the section does not operate as a mere directive for the Corps to 'enforce' the RHA, because 'Enforcement' is covered in an entirely separate section of the RHA." Appellant's Br. at 45. Thus, the action HMC seeks from the Corps is neither discrete nor mandatory.[3]

Section 404 of the CWA likewise lacks language compelling the Corps to administer the CWA permitting program, and in fact includes language that explicitly leaves the process of issuing permits to the Corps' discretion. Section 404 states: "The Secretary [of the Army] *may* issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344 (emphasis added). HMC seeks to explain away the discretionary language of section 404 by asserting that the text simply conveys that "because a person applies for a permit does not mean that the Corps 'must' or 'shall' issue the permit." Appellant's Br. at 51. Although this reading may be correct, it does nothing to support HMC's contention that the Corps has a non-discretionary duty under the CWA to administer the CWA permitting program by seeking out potential violators and forcing them to submit an application. It is clear from the text of the CWA that Congress did not contemplate placing the burden on the agency to initiate the permit process, but rather to process permit applications once

---

[3]HMC also relies on the Corps' regulation, 33 C.F.R. § 322.3(c)(2) for the proposition that section 10 operates as a "congressional permitting mandate." Appellant's Br. at 46. However, § 322.3(c)(2) considers the obligation of other federal agencies, not private parties, to obtain RHA permitting before engaging in activities covered by the RHA and is therefore inapposite.

filed. *Cf. Rapanos v. United States*, 547 U.S. 715, 721 (2006) (plurality) (the Corps "exercises the discretion of an enlightened despot" in issuing discharge permits).

Further, HMC attempts to tread a fine line between the Corps' decision not to bring an enforcement action against Kennecott—a decision that HMC acknowledges is discretionary and hence not reviewable under the APA—and the Corps' purported decision to "ignore its congressionally mandated responsibilities to administer the RHA and CWA permitting programs *when the facts of the case prove that the Corps' jurisdiction has been triggered*." Appellant's Br. at 47 (emphasis in original). However, HMC is vague regarding what the Corps is required to do to "administer the RHA and CWA permitting programs" if not bring an enforcement action against Kennecott. To the extent HMC contends that the Corps is obligated to make a decision whether Kennecott's actions violate federal law in the absence of a permitting application or request for a jurisdictional assessment,[4] it offers no support for that position based on the statutes' text or case law. As HMC acknowledges, no other court has considered whether a federal agency has complied with the "permitting mandates" of the RHA or CWA—perhaps because no such mandate exists under the text of the statute. *See* Appellant's Br. at 10.

Instead, HMC relies on the Supreme Court's decision in *Heckler v. Chaney,* 470 U.S. 821 (1985), a case that, on its face, weighs against HMC. In *Chaney*, prison inmates sentenced to death by lethal injection of certain drugs requested that the Food and Drug Administration (FDA) eitherp

---

[4]The Corps' Regulatory Guidance Letter No. 08-02 provides guidance regarding the process of obtaining a jurisdictional determination from the Corps.

approve the drugs as "safe and effective" for human execution or bring an enforcement action against the States utilizing the drugs to execute inmates. *Id.* at 823–24. The FDA declined to bring an enforcement action and the inmates sought review of the FDA's refusal under the APA. *Id.* at 824–25. The Court found the FDA's decision not to take enforcement action was unreviewable under the APA, holding that agency *inaction* was generally "committed to agency discretion by law," and thus unsuitable for judicial review. *Id.* at 838; *see Matthews v. Town of Greeneville*, 932 F.2d 968 (6th Cir. 1991) (table).

HMC argues that the instant case is distinguishable from *Chaney*, focusing on a footnote in *Chaney* that states:

> We do not have in this case a refusal by the agency to institute proceedings based solely on the belief that it lacks jurisdiction. Nor do we have a situation where it could justifiably be found that the agency has "consciously and expressly adopted a general policy" that is so extreme as to amount to an abdication of its statutory responsibilities. *See, e.g., Adams v. Richardson*, 156 U.S. App. D.C. 267, 480 F.2d 1159 (1973) (en banc). Although we express no opinion on whether such decisions would be unreviewable under § 701(a)(2), we note that in those situations the statute conferring authority on the agency might indicate that such decisions were not "committed to agency discretion."

*Chaney*, 470 U.S. at 833 n.4. HMC argues that here, the Corps is refusing to institute proceedings based solely on the belief that it lacks jurisdiction, and thus the enforcement principles discussed in *Chaney* are inapplicable. Appellant's Br. at 43. HMC's argument is unpersuasive for two reasons. First, the *Chaney* footnote does not state that where an agency engages in non-enforcement solely because of a purported lack of jurisdiction its actions are *per se* reviewable under the APA, but rather that the case did not address such a situation. *Chaney*, 470 U.S. at 833 n.4 (agency non-enforcement decision based solely on a belief that it lacks jurisdiction "*might* indicate that such

decisions were not 'committed to agency discretion'") (emphasis added); *id*. at 839 (Brennan, J., concurring) ("[T]he Court properly does not decide today that nonenforcement decisions are unreviewable in cases where . . . an agency flatly claims that it has no statutory jurisdiction to reach certain conduct."). Second, unlike the situation contemplated in *Chaney*, the Corps has not determined that it lacks jurisdiction. Accordingly, it is speculative that the Corps "refus[ed] to institute proceedings" ("proceedings" being a vague term, as enforcement proceedings are not at issue) *solely* based on a determination of lack of jurisdiction.[5]

Thus, HMC has not shown a likelihood of prevailing on the merits against the Corps on its claim that the RHA and CWA impose a nondiscretionary duty to "administer" or "implement" their permitting programs that requires them to force permitting requests. As the district court concluded, HMC's request for a preliminary injunction seeks to compel action that falls squarely within the discretionary and enforcement decisions that are unreviewable under the APA. Because the district court did not err in determining that HMC does not have a likelihood of succeeding on its claim that review of the Corps' inaction is proper under the APA, we need not consider the underlying merits of its position regarding section 10 of the RHA and section 404 of the CWA; even assuming that

---

[5]*Estate of Smith v. Heckler*, 747 F.2d 583 (10th Cir. 1984), further cited for support by HMC, does not hold to the contrary. In *Estate of Smith*, the Tenth Circuit found that the Medicaid Act obligated the Secretary of Health and Human Services to keep informed about the quality of care being provided at nursing facilities and required that the Secretary promulgate regulations and a certain type of enforcement system that assisted her in this process. *Id.* at 590. Here, the Corps has promulgated regulations furthering the aim of identifying and punishing violators of the RHA and CWA, which they can utilize at their discretion, and HMC does not challenge this enforcement system.

Kennecott is violating the RHA and CWA, the Corps' decision to bring (or not bring) an enforcement action is discretionary and not subject to review by this court.[6]

## IV.

We turn next to the issue of HMC's claims against Kennecott. HMC does not purport to bring a citizen suit under the CWA, 33 U.S.C. § 1365(a)(1). Rather, HMC sought injunctive relief against Kennecott pursuant to the All Writs Act, 28 U.S.C. § 1651, or the federal courts' "inherent powers." The All Writs Act provides that Article III courts generally "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see In re Life Investors Ins. Co. of Amer.*, 589 F.3d 319, 330 (6th Cir. 2009). The statute does not provide federal courts with an independent source of jurisdiction to issue writs, but only with the authority to issue writs "in aid of their respective jurisdictions." *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011) (citations omitted). We have held that the statute should only be used "sparingly and only in the most critical and exigent circumstances." *In re Life Investors Ins. Co. of Amer.*, 589 F.3d at 330 (quoting *Wisc. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers)).

---

[6]HMC also requested as part of its preliminary injunctive relief that the Federal Defendants compel Kennecott to submit to environmental and cultural investigations, consultations, and assessments under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, and the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470a. As HMC acknowledges, its claims under the NEPA, the NHPA, and the ESA against the other Federal Defendants are derivative of its claims under the RHA and CWA. *See* Appellant's Br. at 59. Because the district court did not err in concluding that HMC is not likely to succeed on the merits on its RHA and CWA claims, HMC likewise does not have a likelihood of success on these derivative claims.

HMC fails to discuss the basis of its All Writs Act claim in its opening brief to this court, and "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007). In any event, as we agree with the district court's conclusion that HMC is not likely to succeed on its claim that the APA or Mandamus Act provides an independent source of jurisdiction against the Federal Defendants, we conclude the court did not err in declining to grant preliminary relief against Kennecott under the All Writs Act. HMC has failed to show that the issuance of injunctive relief would be "necessary or appropriate to effectuate and prevent the frustration of orders [the court] has previously issued *in its exercise of jurisdiction otherwise obtained*." *United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004) (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977)) (emphasis added).

## V.

We turn next to the issue of irreparable harm purportedly caused by the Federal Defendants' failure to conduct required environmental evaluations under the NEPA, NHPA, and ESA. Appellant's Br. at 64–65. As we agree with the district court's conclusion that HMC is not likely to succeed in its RHA and CWA claims against the Federal Defendants, and HMC acknowledges that its claims under the NEPA, NHPA, and ESA are dependent on the success of those claims, there is also an insufficient showing of harm from a violation of HMC's procedural rights.

HMC further alleges that it will be harmed by the alleged environmental "impacts" of the Eagle Mine project. Appellant's Br. at 64–65. The Ingham County Circuit Court affirmed the MDEQ's finding that the environmental harms HMC alleges are not likely to occur. Although state

and federal interests are not identical, where Michigan has previously determined that the environmental harms are not likely to occur and is engaged in continued monitoring of the Eagle Mine's construction and development, we find no error in the district court's determination that HMC failed to show that it will suffer irreparable harm.

In addition, HMC did not file this federal action until six years after HMC's initial state challenge to Kennecott's construction of the Mine. "[A]n unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm." *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013). HMC asserts that the delay was not intentional, and that "[i]t was not until Kennecott began its *sub*surface work that it registered with HMC the STR might have characteristics, which implicate federal jurisdiction." Appellant's Reply Br. at 37. However, as the district court pointed out, the plans to excavate under the STR were clear from the outset and HMC did not allege federal law violations until after it failed to halt construction of the Mine through state channels. Thus, the court did not err by considering HMC's delay in filing this federal action as a factor weighing against injunctive relief.

Accordingly, the district court did not err in determining that HMC will not suffer irreparable harm from the Federal Defendants' lack of action.

**VI.**

Finally, HMC contends that the balance of harms weighs in favor of preliminary injunctive relief. As discussed above, HMC is unlikely to succeed on the merits regarding its claim that the Corps has failed to comply with a mandatory, discrete duty under the RHA and CWA. Thus, a preliminary injunction would not, as HMC claims, require federal agencies "to fulfill their legitimate

government functions." Appellant's Br. at 68. The district court did not abuse its discretion by determining that the balance of harms weighed against the grant of a preliminary injunction against the Federal Defendants.

## VII.

Accordingly, we affirm the district court's denial of HMC's motion for injunctive relief.